Chief Judge Fuld.
In May, 1968, the State Legislature enacted a law empowering the Legislature of Erie County to enter into contracts and incur indebtedness in connection with the building of a stadium (L. 1968, ch. 252). Shortly thereafter, the County Legislature adopted a resolution authorizing issuance of bonds in the amount of $50,000,000 to finance the construction of a domed stadium. The county then began discussions with the defendant Kenford Company, one of whose principal stockholders is the operator of the only similarly constructed stadium in the country, the Houston Astrodome. In June of 1969, Kenford presented a proposal to the county whereby Kenford would donate to the county the land on which the stadium would be built and, in return, Kenford—through a subsidiary, Dome Stadium, Inc.—would operate the structure under a 40-year lease from the county.[1] Alternatively, it was proposed that, if the parties could not agree on a lease, Kenford would operate the stadium as manager under a 20-year contract.
Upon receipt of the offer, the County Legislature passed a resolution authorizing the County Executive to negotiate a contract with Kenford and, on August 5, the legislative body empowered him to sign the contract. The agreement provided, in general, that Kenford would operate the stadium as lessee and would pay to the county, over a 40-year term, some 63.75 million dollars, such amount to be reduced by tax revenues generated by the stadium. If the parties could not agree upon a lease within three months after the cost estimates and specifications for the stadium were received by the county, then, the contract specified, the parties would execute a 20-year management agreement whereby Kenford would operate the stadium in return for a percentage of the revenues.
*85 This is the third taxpayers ’ suit which has been brought challenging the validity of the stadium project. The other two — brought by Jerome Murphy and Bradley J. Hurd, respectively —have been dismissed. Murphy’s complaint was held insufficient on its face, without prejudice to amendment, while Hurd’s, attacking the contract on the ground that it was entered into without competitive bidding, was dismissed on the merits. (Hurd v. Erie County, 34 A D 2d 289.) In the present case, the plaintiffs allege that certain terms of the contract violated provisions of the State Constitution and effected a waste of county funds. They seek judgment (1) enjoining the county from spending any of its money or property on the stadium, from permitting the stadium to be operated by someone other than county employees and from executing the contract with Kenford and (2) declaring null and void the resolutions authorizing the building of the stadium and the execution of contracts with Kenford.
Both Kenford and Erie County moved to dismiss the complaint; the court at Special Term granted the motions because, first, the suit was barred on res judicata grounds by the Hurd action (34 AD 2d 289, supra) and, second, because, on the merits, no illegal, wrongful or dishonest acts existed. The Appellate Division, although disagreeing with Special Term as to the scope of res judicata, affirmed on the merits, and the plaintiffs appeal to this court as of right on constitutional grounds.
The defendants maintain that the Hurd action provides a complete defense to the present one, for the reason that it is res judicata as to all questions which might have been raised therein. The plaintiffs recognize that the doctrine of res judicata may be availed of in a taxpayer’s suit but contend that it bars only proof of those matters which had actually been litigated in the prior action. This is critical in the case before us, since the present plaintiffs complain of far more than the absence of competitive bidding pleaded in Hurd. Strong policy reasons may be mustered for the position taken by each side. On the one hand, it is certainly desirable that there be an end to taxpayer suits with respect to a particular matter so that the governmental body involved may function without the fear of repeated complaints challenging the same action. On the other hand, taxpayers’ actions serve a salutary purpose in providing a check on *86 abuse of official power, and this purpose is undermined if an ineffectual suit is brought first and then is considered a bar to any further challenge. The decisions provide no clear answer. On balance, applying the standards suggested by Weinstein, Korn and Miller (N. Y. Civ. Prac., vol. 5, par. 5011.35), we hold that res judicata applies only as to the matters actually litigated in the prior suit. This is justified because the cases, commenced but a few days apart, pose completely different issues; in Hurd, the plaintiff raised only a threshold question—the necessity for competitive bidding on the contract—while the plaintiffs herein challenge the provisions of the contract itself. These provisions deserve judicial scrutiny, and the doctrine of res judicata should not prevent a court from passing upon the merits of contentions not previously advanced.
In addition, Erie County urges that the appeal should be dismissed for the reason that the controversy has become moot. It is the county’s submission that, although it authorized financing at a level of $50,000,000, the bids to construct the stadium— received after the Appellate Division had affirmed Special Term’s order—amounted to over $70,000,000, and it argues from this that the ability to build the structure for the smaller amount was a condition precedent to its obligation to Kenford under the contract.[2] This being so, the argument continues, the present action to void the contract with Kenford has become unnecessary. The fact that the bids submitted exceeded the amount authorized by the county does not render the litigation moot. Whether the county is absolved from any obligation to Kenford and whether its legislature was justified in rescinding the contract by unilateral action are questions which require a factual determination as to the intention of the parties. In the cases relied on by the county, the fact that the challenged governmental action could not be effectuated was clear from the record. Such is not the situation here, and it may well be that Kenford will be able to prevail in a suit against the county based upon the contract. Under these circumstances, we may not say that a decision as to the constitutional validity of the provisions of the contract has become unnecessary.
*87 This brings ns to a consideration of the merits of the plaintiffs’ argument that the lease or management contract is not warranted by the act authorizing the county to build the stadium. It is sufficiently answered by the language of the legislation itself. Entitled “ Air act relating to the construction and financing of a stadium by the county of Erie and authorizing, in aid of such financing, the leasing of such stadium ’ ’, the statute specifically empowers the county to ‘ enter into contracts, leases, or rental agreements with, or grant licenses, permits, concessions, or other authorizations, to any person or persons ’ ’. Quite obviously, it was designed to give the county the broadest latitude possible in the operation of the stadium. It was perfectly reasonable for the county to conclude not only that it needed professional help in the complex running of a multi-million dollar, multi-purpose public arena but that it should arrange to employ the only company with experience in the field either as lessee or manager. The case of Tierney v. Cohen (268 N. Y. 464), relied on by the plaintiffs—in which the court held invalid a local bond provision in clear contravention of the enabling act there involved—is manifestly inapposite.
The plaintiffs, acknowledging that the erection of a stadium in Erie County is a public purpose, insist—and this point is at the heart of all their arguments—that, by giving control over the stadium to Kenford, for either 40 years under the lease or 20 years under the management contract and not retaining any right to use the facility, the county converted the stadium into a private use for Kenford’s benefit. This position misconceives the nature of the public use which the stadium serves. As declared by the State Legislature, it is designed to ‘ * furnish to, or foster, or promote among, or provide for the benefit of, the people of the county of Erie, recreation, entertainment, amusement, education, enlightenment, cultural enrichment ” (L. 1968, ch. 252, § 2; emphasis supplied). That the county may not itself be using the stadium seems irrelevant to these purposes, for it is evident that the county’s residents will be obtaining the full benefit for which the stadium is intended, the ability to view sporting events and cultural activities, regardless of the identity of the party operating the stadium. The fact that the very public purpose for which the stadium is authorized will be served by it, even though Kenford will also derive a benefit from *88 it, distinguishes this case from those relied on by the plaintiff (see, e.g., Denihan Enterprises v. O’Dwyer, 302 N. Y. 451; Schieffelin v. Hylan, 236 N. Y. 254; People v. Westchester County Bank, 231 N. Y. 465; Smith v. Smythe, 197 N. Y. 457), where the benefit of the challenged expenditure accrued only to a private party. In the Denihan case (302 N. Y. 451, supra), for example, in which New York City desired to erect a parking facility and lease it to a private operator, our affirmance of the order denying dismissal of the complaint was placed on the ground that its allegations indicated that the private concern, not the public, would benefit from the new garage (302 N. Y., at p. 459). This is materially different from the situation in the present case, where the private benefit is “ incidental ” to the conceded public purpose of the stadium. “ [A]n incidental private benefit,” we wrote in Denihan (302 N. Y., at p. 458), “is not enough to invalidate a project which has for its primary object a public purpose ”,
It follows from what we have written that the lease here under attack may not be construed as a “ loan ” or “ gift ’ ’ of county property ‘ ‘ in aid of any * * * private corporation or association, or private undertaking,” as prohibited by article VIII (§ 1) of our State Constitution. As demonstrated above, the lease is in furtherance of a public and not a private purpose. It is established that a municipality may lease its public improvements to private concerns so long as the benefit accrues to the public and the municipality retains ownership of the improvement. (See Salzman v. Impellitteri, 305 N. Y. 414, 420; Admiral Realty Co. v. City of New York, 206 N. Y. 110, 128; Martin v. Philadelphia, 420 Pa. 14, 18; see, also, 10 Op. State Comp., 1954, Opn. No. 7002, p. 402.) In upholding the lease of a city subway system to a private operator, the court in Admiral Realty declared that ‘ the municipality need not itself operate such railroads, but might provide for the operation thereof by some one else under a lease not in perpetuity ” (206 N. Y., at p. 128). And in the Martin case (420 Pa. 14, supra), which involved a stadium in Philadelphia, the Pennsylvania high court noted that “ ‘ the City has the power to lease the stadium to private enterprise ’ ” because such a lease would be “ ‘ incident to providing for “ the recreation or the pleasure of the public ” ’ ” (420 Pa., at p. 18). This is precisely the situation in the case before us.
*89 The other contentions advanced by the plaintiffs do not warrant discussion. Suffice it to say that they raise no substantial issues of illegality but only of the wisdom of the plan adopted by the county, and these are matters for the Legislature alone to resolve. (See, e.g., Gaynor v. Rockefeller, 15 N Y 2d 120, 134.) In sum, the contract between Kenford and Erie County does not offend against constitutional or statutory provisions.
The order appealed from should, therefore, be affirmed, without costs.
Judges Scileppi, Bebgan, Bbeitel, Jasen and Gibson concur; Judge Bubke taking no part.
Order affirmed.

. Dome would be the New York arm of Kenford and, accordingly, throughout this opinion “ Kenford ” refers to both corporations.

. We have also been informed that the County Legislature passed a resolution —• after oral argument before us — declaring its relationship with Kenford to be at an end, without legal liability on the part of the county.