Thomas R. Jones, J.
This article 78 proceeding appears to present a case of first impression which involves the fixing of "first rents” for apartments in a rent-controlled building at 356-364 Sumpter Street in Brooklyn by the New York City Office of Rent Control of the Department of Rent and Housing Maintenance. The rehabilitation of the 54-family apartment house, which has occasioned substantial rent increases on all apartments, was financed under the Municipal Loan Program of the City of New York by a $902,300 loan to the owners, *477 pursuant to article VIII of the New York State Private Housing Finance Law.
The petitioners are 10 tenants whose rents were trebled and quadrupled at the completion of the improvements by the respondent Rent Commissioner. Petitioners claim that the arrangements and procedures whereby their rents were drastically increased deprived them of due process of law. They seek to enjoin Roger Starr, the Administrator of the Housing and Development Administration and Daniel W. Joy, the Commissioner of the New York City Department of Rent and Housing Maintenance and Sumpter Housing Associates, from raising their rents, on the grounds that the actions of these agencies, officials and landlord were arbitrary and capricious.
Section Y51-5.0 (subd g, par 1, cl [m]) of the Administrative Code of the City of New York and section 33.9 of the Rent and Eviction Regulations vest the Rent Commissioner with authority to increase rents in rent-controlled buildings: "where he finds that there has been a rehabilitation or improvement of substandard or deteriorated housing accommodations which has been financed under a governmental program providing assistance through loans, loan insurance or tax abatement”.
The landlord, Sumpter Housing Associates, obtained a loan on May 16, 1973 in the sum of $902,300 from the Housing and Development Administration.
The Housing and Development Administration thereafter supervised the rehabilitation of the premises and authorized payment of loan funds as the work progressed. The New York State Private Loan program as set forth in section 400 of article VIII of the Private Housing Finance Law is to rehabilitate and improve housing for low income families in multiple dwellings by providing: "low interest rate loans to owners of such multiple dwellings for the purpose of such * * * rehabilitation or improvement; [and for the] installation of proper heating facilities * * * for occupancy by persons of low income”.
The respondent Rent Commissioner says of this program in his affidavit at paragraph 3 on page 2: "The loan program * * * offers an incentive to landlords to improve their buildings and redounds to the benefit of tenants in better housing conditions without exhorbitant rent increases”. (Emphasis supplied.)
The Housing Administrator informed the tenants that he approved the rehabilitation of their premises and that rent *478 increases would follow, but the tenants were not otherwise consulted nor made part of the process.
Upon completion of the planned improvements on July 5, 1974, the Housing Administrator submitted the total cost components including taxes and the owner’s profit allowance, etc. to the Rent Commissioner, pursuant to section 33.9 of the Rent Regulations, to establish new rents. The respondent Rent Commissioner in his affidavit at page 6, asserts that the rent was established:
"At the lowest level sufficient to carry the costs of operation and debt service on the new financing plus a return limited on the landlord’s equity. The components used in setting the rents were as follows:
"a) Interest and amortization on mortgage;
"b) Mortgage services charge of .0025 of principal;
"c) Allowance for maintenance and operating costs;
"d) Allowance of 8% return on owner’s equity;
"e) Allowance of 5% for vacancy and rent collection losses;
"f) Allowance for real estate taxes that are not exempt and abated.”
The Rent Commissioner proceeded to develop and approve a new rent schedule based on these factors. The new "first rents” notices were served on the tenants in August, 1974. The arithmetic of the rehabilitation plus other costs, resulted in the following substantial increases for some of the petitioners:
1974
NAME BLDG. APT. MAX. RENT NEW RENT DIFFERENCE
Richardson 364 7D $70 $180 $110
Harmon 364 1A 55 200 145
Blackwell 364 2C 54 149 95
Davis 356 5D 67 149 82
Johnson 356 2A 65 180 135
The shocking consequences of a benign program, which was enacted by the New York State Legislature for the avowed purpose of enabling tenants of limited means to live in better housing "without exorbitant increases” in their rents, are that hard pressed "beneficiaries” of the law are now compelled to pay large increases in rent, whether they can afford to do so or not!
The court, however, cannot alter a law passed by the New York State Legislature when it has acted in a constitutional manner. The policy decisions of the State Legislature, which *479 permit a landlord to borrow public tax funds to improve his private property and then pass on the increases to tenants, are beyond this court’s power to change; for a court cannot intervene when the Legislature legally enacts such statutes and hands over the execution of the program to the executive branch of government. It is not the function of the court to substitute its judgment for that of the Legislature and, in effect, act as a super-Legislature (Matter of Vintage Soc. Wholesalers Corp. v State Liq. Auth., 63 Misc 2d 287, 289). Courts do not sit in judgment on questions of legislative policy (Murphy v Erie County, 34 AD2d 295, 298, affd 28 NY2d 80; Nettleton Co. v Diamond, 27 NY2d 182, 194, rearg den 28 NY2d 539, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 539).
New rent schedules were developed and tested in an adversary (protest) proceeding before the Rent Commissioner, where the tenants and their lawyers were heard and their views considered. When the agency or body charged with responsibility of implementing statute makes a determination which has warrant in the record, a reasonable basis in law, and is not arbitrary and capricious, then judicial function is exhausted and the board’s determination should be accepted (Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept., 37 AD2d 437, 440; Matter of Howard v Wyman, 28 NY2d 435, 438; Matter of Park East Land Corp. v Finkelstein, 299 NY 70, 75). Courts do not interfere with an administrative agency’s course of action merely because another course might arguably be preferable, nor do courts attempt to impose on an agency its view of what constitutes sound administrative policy (Semple v Miller, 38 AD2d 174, 176).
The petitioners claim that they have been deprived of due process of law by not having been a party to the procedures which resulted in a substantial increase in their rentals. There is "no merit to the intervenors’ claim that tenants are constitutionally entitled to notice and an opportunity to be heard before rents are adjusted”. (Bedford Bldg. Co. v Beame, 38 NY2d 729, 731; cf. Wasserogel v Meyerowitz, 300 NY 125, 131-132.) A hearing is permissive in nature and is subject to the Administrator’s discretion (Matter of Cohen v McGoldrick, 198 Misc 1036; Karley v Weaver, 200 NYS2d 1001).
The voluminous records in this matter have been carefully examined by the court. They provide a factual and rational *480 basis for the commissioner’s decision to fix "first rents” and to deny the tenants’ protests.
The court is painfully aware that the petitioners are suffering acute economic distress in the midst of national crisis, marked by rampant inflation and widespread unemployment. The judicial branch is without power, however, to overrule the political judgments of the Legislature which have led to such dire results for poor people.
It may be that petitioners, or some of them, will be entitled to rent subsidy under section 1437f of title 42 of the United States Code which will help to relieve the financial burden created by the New York State Private Housing Finance Law in operation.
Accordingly, the application must be denied.
The petition is dismissed.