Hon. William C. Hennessy Commissioner New York State Department of Transportation
This is in response to the request made by Hon. Darrell W. Harp, Assistant Commissioner of Legal Affairs, whether the State acting through your Department may participate in a Federally-sponsored program to encourage the use of vanpools and carpools by employees traveling to and from work. Your specific question is whether the program would run afoul of Section 8 of Article VII of the Constitution, which prohibits the loan or gift of State funds to or in aid of a private undertaking or a private corporation or association.
The Federal carpool and vanpool program is one designed "to conserve fuel, decrease traffic congestion during rush hours, improve air quality, and enhance the use of existing highways and parking facilities" (23 U.S.C. § 146 [a]). In furtherance of this purpose, the Federal program provides capital on an interest-free loan basis to finance the acquisition of vehicles suitable and economical for ride-sharing to an entity that would operate the pool, collecting "commuter fares" sufficient to cover operating costs and pay back the capital advanced. The Federal portion of the capital cost is limited to 75 percent.
Your Department would serve as an agency to promote vanpooling and to obtain Federal funds to carry out approved projects. You have advised us that the State involvement would be the advance of State money to the vanpooling entity following Federal approval and pending reimbursement by the Federal Highway Administration. The State funds used would come from the First Instance appropriation for the Federal Aid Urban Systems program. A maximum use of State funds would occur if the proposed vanpool entity could not finance the whole of the remaining 25 percent of the initial capital cost. State funds for this purpose would come from a regular State appropriation. The vanpool entity would be obligated to pay back to the State the total amount advanced. If that amount were limited to the Federal advance, your Department would in turn pay back the Federal advance. If the amount were more than the Federal advance, the excess would go into the State's general fund. If the vanpool entity failed to repay the advance in full, the State and Federal governments would share the loss in proportion to their respective shares of the advance.
The vanpool program as described comes within the prohibition of Section 8 of Article VII of the Constitution only if the words are read literally. The vanpool entity would undoubtedly be a "private corporation or association" engaged in a "private undertaking". State money would be a "loan"; even the advance of first instance money pending reimbursement by FHWA would be an interim "loan" of State money. Over the years, however, the courts have softened the rigid limitation of Section 8. The essence of the softening in the first seven decades of the provision was spelled out in People v Westchester County Nat. Bank, 231 N.Y. 465
(1921), a case that, paradoxically, held the soldiers' bonus to be an unconstitutional gift. After reviewing earlier cases that had not fallen afoul of the provision, the Court summarized them:
 "In all some direct benefit was received by the state as a state or some direct injury suffered by the claimant under circumstances where in fairness the state might be asked to respond — where something more than a mere gratuity was involved" (p 477).
In the half century since the Westchester decision, the courts in effect have further softened the limitation of Section 8 by broadening the concept of "direct benefit" to the State. This has taken the form of recognizing the public interest and public purpose in the expenditure of public funds in ways that "directly benefit" private groups in the course of furthering the public interest. See, for example, MetropolitanTransportation Authority v Village of Tuckahoe, 67 Misc.2d 895 (Sup Ct, Westchester Co, 1973), affd (no op) 38 A.D.2d 570 (2d Dept, 1971) (payment to private corporation to improve its property); Murphy v ErieCounty, 28 N.Y.2d 80 (1971) (long-term lease of publicly-owned stadium to private corporation); Yonkers Community Development Agency v Morris,37 N.Y.2d 478 (1975) (sale of urban renewal property obtained by condemnation to private corporation for substantially less than acquisition cost); Hotel Dorset Co. v Trust for Cultural Resources,46 N.Y.2d 358 (1978) (tax exemption to museum for property to be used in part for commercial purposes to produce income). See also 1979 Ops Atty Gen ___ (State grant to private developer to assist in preservation of a landmark city hall).
The essence of a century of developing judicial gloss on the "gifts and loans" prohibition is a recognition that what is a public purpose and in the public interest is vastly different now. In today's complex, inter-dependent society there are many things that can be more effectively accomplished through controlled assistance to private groups than by direct action by government. The proposed vanpool program is an example of this. It is in the State's and the public's interest "to conserve fuel, decrease traffic congestion during rush hours, improve air quality, and enhance the use of existing highways and parking facilities", the purpose enunciated by Congress in establishing the vanpool program. To the extent that commuters can be induced to combine and commute to and from work in one vehicle instead of several, the public interest is directly served. If the inducement includes an interest-free loan to get the venture started, the loan is less in aid of a private undertaking than it is a carrot to get the commuters to aid the State. (Compare the tax credit granted to people who make energy-saving improvements in their homes.) There is obviously a need for a carrot; otherwise, vanpools would have become a common mode of commuting. A carrot in the form of a loan to groups willing to forego the freedom of individually driving to work is not the kind of loan that Section 8 contemplated.
We conclude that your participation in the Federal vanpool program as outlined above is not prohibited by Section 8 of Article VII of the State Constitution.