OPINION OF THE COURT
Michael D. Stallman, J.
This action is the fourth of five lawsuits[1] commenced by *565 plaintiff Landmark West! concerning the vacant structure at 2 Columbus Circle, formerly Huntington Hartford’s Gallery of Modern Art.
Plaintiff Landmark West! and others claim inter alla that the City of New York, acting with defendant New York City Economic Development Corporation, violated the State Constitution, the City Charter and the public trust doctrine. Defendants seek dismissal.[2]
Background
Edward Durell Stone designed 2 Columbus Circle in 1964 as the home of Huntington Hartford’s Gallery of Contemporary Art.[3] From 1969 to 1975, Farleigh Dickinson University used the building for its New York Cultural Center. In 1976, Gulf & Western Industries, Inc. purchased it, taking title in the name of Gulf & Western Foundation (G & W).
In 1980, G & W donated the building to the City of New York, its successors, and assigns, by a deed dated March 18, 1980 and a deed of correction dated July 22, 1980. The deeds require the City to use the building as its principal public facility for visitors’ services and cultural affairs for 30 years. If the building were to be used for another purpose, the City would lose title; ownership would automatically revert to G & W (or its successors and assigns).
From 1981 until 1998, the building served as headquarters to the New York City Department of Cultural Affairs and the New York City Convention and Visitors Bureau. In July 1996, defendant New York City Economic Development Corporation (EDC)[4] purchased the reverter interest from G & W’s successor. The building has been vacant since 1998.
*566 In March 2000, EDC issued a request for proposals for the sale and redevelopment of 2 Columbus Circle. In 2002, EDC conditionally designated the Museum of Arts and Design, a not-for-profit corporation, to renovate and redevelop the building as a museum open to the public. Formerly the American Craft Museum, the Museum specializes in modern and contemporary sculpture, functional objects and new art forms. The Museum’s plan involves the City’s sale of the building to the EDC, which would then sell it to the Museum. Under the terms of the proposed sale, the Museum’s purchase price is $17.05 million, to be paid as $2 million cash and $15.05 million payable pursuant to a note, $4 million of which would not bear interest. If the building is renovated and opened to the public within 24 months from the start of construction, the principal will be reduced by $2 million as of the closing. EDO’s Board of Directors approved the sale to the Museum on August 3, 2004.
Under the City Charter, the proposed sale required approval of the Manhattan Borough Board, because the building was not being sold through competitive bidding. The Manhattan Borough Board approved the sale on August 24, 2004.
The Museum’s intention to replace the building’s exterior and renovate its interior sparked a series of lawsuits by plaintiff Landmark West! and its supporters, who seek to have 2 Columbus Circle designated a landmark.
The aesthetic worth of 2 Columbus Circle and that of the Museum’s planned renovation are not before this court. Neither are the related issues of whether the present structure is worthy of landmark designation or whether the Landmarks Preservation Commission should hold a public hearing.[5]
On April 7, 2005, plaintiffs commenced this taxpayer suit under General Municipal Law § 51 against the City and EDC,[6] asserting three causes of action. Plaintiffs challenge the *567 proposed sale as violative of the Gift and Loan Clause of the State Constitution, New York City Charter §§ 283 and 284, and the public trust doctrine. The City and EDC moved to dismiss the complaint.[7]
I
Defendants initially contend that res judicata bars this action. The doctrine of res judicata (claim preclusion) bars a party from asserting claims that it raised or could have raised in any prior action against the same parties, or parties in privity, based on the same transaction. (See O’Brien v City of Syracuse, 54 NY2d 353, 357 [1981].) Defendants allege res judicata based on the action against the Manhattan Borough Board, but neither the City, the EDC, nor the other plaintiffs here were parties to that case. Moreover, res judicata does not apply to plaintiffs’ taxpayer action under General Municipal Law § 51. (Murphy v Erie County, 28 NY2d 80, 86 [1971].) In Murphy, the Court of Appeals weighed the strong, traditional, policy reasons for applying res judicata against the purpose of a taxpayer action: to “provid[e] a check on abuse of official power.” (Ibid. at 85-86.) As to taxpayer actions, as a policy matter, the Court held, “res judicata applies only as to the matters actually litigated in the prior suit.” (Ibid, at 86.) The merits of a taxpayer action were not actually litigated in the action against the Manhattan Borough Board; the Court addressed only whether the plaintiffs in that action were, in fact, bringing a taxpayer action, as distinct from a challenge under the Open Meetings Law (Public Officers Law § 107). The specific allegations of waste and corruption that plaintiffs allege here were not made in the action against the Manhattan Borough Board. Res judicata does not bar this action.[8]
*568 II
In their first cause of action, plaintiffs claim that the proposed sale violates the Gift and Loan Clause of the State Constitution (NY Const, art VIII, § 1). Plaintiffs allege that the terms of the sale from EDC to the Museum are a “sweetheart deal,” because the Museum will pay $4 million of the purchase price over five years without interest, and the remaining balance will have a maximum interest rate of 6.16%. Plaintiffs also allege that the Museum will receive $2 million under the City’s 2005 capital budget, $75,000 under the City’s expense budget, and another $1 million under the City’s 2006 budget.
Defendants assert that expenditures and grants to a private entity do not violate the Gift and Loan Clause if they further a public purpose. Defendants contend that giving public funds to a private not-for-profit institution for the purpose of maintaining a public museum is also consistent with the General City Law. Defendants maintain that the provisions in the City’s 2005 capital and expense budgets are not part of the proposed sale of the building. They indicate that the capital budget funds were allocated by City Council member Gail Brewer, not the Mayor. Defendants argue that any constitutional challenge to the proposed sale is time-barred. The City maintains that the proposed sale does not violate the Gift and Loan Clause because the building’s purchase price is roughly equal to, or greater than, its appraised value, and because the EDC intends to restrict the Museum’s use of the building to a museum for a period of 15 years.[9]
The Gift and Loan Clause of the State Constitution provides, in relevant part:
“No . . . city . . . shall give or loan any money or property to or in aid of any individual, or private corporation or association . . . ; nor shall any . . . city . . . give or loan its credit to or in aid of any individual, or public or private corporation or association . . . .”
“In general, the Gift and Loan Clause prohibits a municipality from expending money for the benefit of a private individual or concern unless the expenditure is in furtherance of a public purpose and the municipality is contractually or statutorily *569 required to do so.” (Matter of Schulz v Warren County Bd. of Supervisors, 179 AD2d 118, 121 [1992]; see also Matter of Antonopoulou v Beame, 32 NY2d 126, 133 [1973]; Piro v Bowen, 76 AD2d 392, 398 [1980].) Projects receiving public funding that serve a public purpose, or that provide a substantial public benefit, do not violate the Gift and Loan Clause, even if the funding provides an incidental benefit to a private individual. (See e.g. Lavin v Klein, 12 AD3d 244, 245 [2004]; Tribeca Community Assn. v New York State Urban Dev. Corp., 200 AD2d 536, 537 [1994].)
New York is America’s preeminent cultural center. The quantity and diversity of cultural institutions and arts offerings help make New York a unique tourist destination and a desirable place in which to live and work. The arts are vital to New York City’s economic health and communal life. The law has long recognized that public support of the arts serves a public or municipal purpose. (See General City Law § 21 [“the promotion of education, art, (and) beauty”].) Nurturing the creation of a new museum, open to the public, advances a public purpose.
Defendants have demonstrated that the funds will be used for a public purpose, and will only incidentally benefit a private entity, as those concepts are understood by case law. The Museum would receive roughly $3 million from the City, while the estimated cost to renovate the entire structure is expected to exceed $20 million. The City’s funds amount to only a small fraction of the project’s cost.[10]
Defendants have not established that the statute of limitations has run on the constitutional challenge to the proposed sale of the building. Under the circumstances presented, neither EDC’s approval nor the Manhattan Borough Board’s approval of the sale would be an appropriate accrual date for a four-month statute of limitations. Defendants assume that plaintiffs are challenging only EDC’s approval (see mem at 11 n 2), and EDC is not a city agency. On the contrary, this cause of action accrues when the transfer of the building takes place, because the Constitution is not violated until the alleged gift or loan actually occurs. Defendants have not revealed when the Department of Citywide Administrative Services transferred ownership of the building to the EDC. Meanwhile, EDC did not enter into a contract of sale with the Museum until May 2005, after this action was commenced.
*570 In Murphy v Erie County (28 NY2d 80 [1971]), the Court of Appeals approved the county’s construction of a stadium and its 40-year lease to a private operator without retaining any right to use it during the lease. The Court found that providing a suitable public space for spectator sports and cultural activities promoted a public purpose and only incidentally benefitted the private lessee. In explaining why the public construction and private lease conferred only an incidental benefit, the Court declared: “It is established that a municipality may lease its improvements to private concerns so long as the benefit accrues to the public and the municipality retains ownership of the improvement.” (Ibid, at 88.) In Imburgia v City of New Rochelle (223 AD2d 44, 46 [1996]), the Court approved the turnkey construction of a new courthouse and a police facility, where the developer would acquire title to the proposed site, but was required to sell the entire development to the city upon completion.
Neither Murphy nor Imburgia hold that the local government must retain ownership of the public property under all circumstances. The Gift and Loan Clause prohibits property transfers only if they lack adequate consideration. (See Grand Realty Co. v City of White Plains, 125 AD2d 639 [1986].) It does not prevent a city from selling disused property to a private party for a fair price, because that transfer would not be a gift.
The proposed sale cannot be considered a gift to the Museum because the building’s sale price exceeds its appraised value.[11] The purchase-money mortgage loan given to the Museum is not an impermissible loan because it is being given by the EDC, not the City. Moreover, because the loan is secured by a mortgage and is an integral part of the terms of sale, it is being given pursuant to a valid contractual obligation.
If the building opens to the public within 24 months after construction begins, then the building’s purchase price is reduced by $2 million to $15.05 million, which is $150,000 less than the building’s appraised value. Plaintiffs regard this rebate as an indirect gift to the Museum. Such an incentive for early completion has become a frequent construction contract device *571 for discouraging costly delays. Timely completion on a two-year schedule gives defendants consideration in exchange for a reduction in the purchase price. Neither the incentive, nor the $150,000 differential, effects an impermissible gift. The Gift and Loan Clause “is designed to prevent the gift of public property, not to regulate the price or the adequacy of the consideration of sales of public property made in good faith.” (Van Curler Dev. Corp. v City of Schenectady, 59 Misc 2d 621, 626 [1969].) The State Comptroller has even ruled that a transfer of property is a gift only if given “without or for only nominal consideration. ” (1981 Ops St Comp No. 81-228.) This is not the case here. Ac-x, cordingly, summary judgment must be granted dismissing the first cause of action.
m
In their second cause of action, plaintiffs claim that the proposed sale of the building violates the New York City Charter. They contend that the building is inalienable property which the City may not sell, or that the City must sell through competitive bidding.
The Charter defines “inalienable property” as the City’s “water front, ferries, wharf property, bridges, land under water, public landings, wharves, docks, streets, avenues, highways, parks, waters, waterways and all other public places.” (NY City Charter § 383.) Plaintiffs contend that the building is a “public place” because the property deed has a 30-year restriction that the City use the building as “its principal public facility for visitors’ services and cultural affairs.”
This argument fails. It is not the donor’s intent that determines whether the building is a public place under NY City Charter § 383. The Charter states that “[n]o . . . public place . . . shall be deemed to have been accepted by the city as a . . . public place, unless such . . . public place shall lie within the lines of a . . . public place upon the city map.” (NY City Charter § 202 [b].) Thus, the City does not accept the building as a public place unless it is mapped on the city map, which plaintiffs have neither pleaded nor shown to be the case. Without evidence that the City accepted the building as a public place, plaintiffs cannot show that the building is inalienable property.
Generally, NY City Charter § 384 (b) (1) permits the Mayor to authorize the sale of City-owned real property or an interest therein “only for the highest marketable price or rental, at pub- *572 lie auction or by sealed bids.” However, the City is not selling the building directly to the Museum, but to the EDC. Section 384 (b) (4) of the NY City Charter allows the Mayor to sell City-owned property to a local development corporation such as the EDC without competitive bidding, if the property does not involve “inalienable property,” and if the Mayor has the approval of the appropriate borough board.[12] The bidding requirements do not apply to EDC’s sale of the building to the Museum, because EDC is not a city agency.
2 Columbus Circle is not inalienable property. The Manhattan Borough Board approved the proposed sale of the building. Therefore, the City may sell the building to the EDC without competitive bidding. Accordingly, summary judgment must be granted dismissing the second cause of action.
IV
In their third cause of action, plaintiffs allege that the proposed sale requires the State Legislature’s approval. Plaintiffs assert that G & W’s gift, which restricted the City’s use to visitors’ services and cultural affairs for 30 years, imposed a public trust. Plaintiffs argue that the City’s public use of the building establishes that the building is held in trust for the benefit of the public, and therefore any conveyance requires authorization by the Legislature.
Rooted in Roman and English law, “the public trust doctrine is based on the notion that the public holds inviolable rights in certain lands and resources, and that regardless of title ownership, the state retains certain rights in such lands and resources in trust for the public.” (5 Grad, Environmental Law § 10.05 [1] [2005].) Historically, the doctrine applied to natural resources such as tidelands, bottoms of seas and oceans, and to navigable waters of lakes and streams. (Ibid.; see e.g. Coxe v State of New York, 144 NY 396, 405-406 [1895].) New York courts have extended the public trust doctrine beyond the waters to include parkland. (See Friends of Van Cortlandt Park v City of New York, 95 NY2d 623, 630 [2001]; Brooklyn Park Commrs. v Armstrong, 45 NY 234 [1871].) The public trust doctrine has no application here. The building does not qualify as a natural resource.
Against the backdrop of the public trust doctrine, a similar concept has evolved. “It has long been the rule that a municipal *573 ity, without specific legislative sanction, may not permit property acquired or held by it for public use to be wholly or partly diverted to a possession or use exclusively private.” (Matter of Lake George Steamboat Co. v Blais, 30 NY2d 48, 51 [1972].) The parties dispute whether this rule applies, given that the public use of the building is only for a limited duration. Defendants read “acquired or held” by the City to mean that the property must be “dedicated” for a public purpose, requiring analysis of whether G & W had intended to dedicate the property, under the common-law principles governing dedication of property to a municipality. (See e.g. Matter of Angiolillo v Town of Greenburgh, 290 AD2d 1 [2d Dept 2001]; Gewirtz v City of Long Beach, 69 Misc 2d 763 [1972], affd 45 AD2d 841 [2d Dept 1974].)[13] Defendants contend that a building cannot be considered held for public use now because it will not be held for public use later.
The court need not address whether the Legislature’s authorization would be required for privatizing property interests having a public use only for a fixed term, i.e., anything less than in perpetuity. Rather, the rule is inapplicable to donated property subject to a possibility of reverter.
The rule is intended to protect the public’s interest in the property by preventing local governments from diverting it from public use. When a donor retains a possibility of reverter, that also restrains the donee local government; if the donee violates the terms of the gift, the donee loses the property completely. The property reverts to the donor, who can use it for any purpose, thereby depriving the donee of title and the public of any use. It would not protect the public’s interest in the property to require the Legislature to consider a proposed use if the approval and conveyance only were to effectuate return of title to the private donor.
As the gift was originally structured, the City’s interest in the property until 2010 was a fee simple determinable, also known *574 as a fee on limitation, with the possibility of reverter[14] to G & W (or its assigns). (See 5 Warren’s Weed, New York Real Property, Estates in Real Property § 47.05 [5th ed].) If the building were used for a purpose other than visitors’ services or cultural affairs before 2010, then the City would lose title to the property automatically, and title would revert to G & W (or its assigns). (See 2 Thompson on Real Property § 20.02 [2d Thomas ed].) It is undisputed that EDC bought the reverter interest in 1996, that the City discontinued using the property for visitors’ services and cultural affairs in 1998, and that the City has not used it for any other purpose.
G & W, the donor, clearly intended the reverter as security—to make sure that the City continued using the property as promised. If it did not, the donor would reacquire it and could use it in any way consistent with G & W’s foundation mission. EDC’s purchase of the reverter interest effectively mooted the reverter’s original purpose: acquisition was manifestly intended to permit the property’s redevelopment for a different use.
The rule was never envisioned to apply to the instant situation, where the gift’s donee (the City) transfers the gift to the owner of the reverter interest (the EDC) for sale to a third party (the Museum) for a different public purpose. Under the unusual circumstances presented, submitting the proposed sale to the Legislature would be ineffectual, because even legislative approval of the proposed use could not prevent the use from triggering the automatic reverter to EDC. Upon reverter, EDC would have title in fee simple absolute; it would be free to sell the building.[15] Accordingly, summary judgment must be granted dismissing the third cause of action.
*575 V
The complaint alleges that plaintiffs bring this action pursuant to General Municipal Law § 51 (complaint 1i 7), which permits taxpayers to sue public officials[16] to prevent official acts that “are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes.” (Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014, 1016 [1983].)
The complaint must allege a violation of General Municipal Law § 51 in order to show standing to assert the other causes of action. Alleging a violation of the Gift and Loan Clause does not establish a constitutional right of standing. (Matter of Schulz v Cobleskill-Richmondville Cent. School Dist. Bd. of Educ., 197 AD2d 247, 251 [1994].)
“[T]o maintain a General Municipal Law § 51 action, the proponent must (1) establish his taxpayer status, and (2) allege an official act which causes waste or injury, imperils the public interest or is calculated to work public injury or to produce some public mischief.” (Matter of Schulz v Warren County Bd. of Supervisors, 179 AD2d at 121 n 2.) Here, the complaint does allege the individual plaintiffs’ status as taxpayers. (See complaint 1Í 6.) Plaintiffs’ allegations that the proposed sale violates the Gift and Loan Clause of the State Constitution and the competitive bidding requirements of the City Charter adequately plead the illegal act requirement. Plaintiffs allege that defendants failed to comply with competitive bidding requirements, thereby presuming a waste of public funds. (See ibid.) Nevertheless, because no violation of the Gift and Loan Clause occurred and competitive bidding was not required, plaintiffs’ taxpayer action lacks merit.[17]
*576 Conclusion
Defendants have demonstrated entitlement to judgment as a matter of law. Plaintiffs have not demonstrated the existence of any triable factual question.
Accordingly, it is hereby ordered that defendants’ motion to dismiss, converted to a motion for summary judgment, is granted, and the complaint is dismissed.

. Matter of Landmark West! v Burden (3 Misc 3d 1102[A], 2004 NY Slip Op 50331[U] [Sup Ct, NY County, Tolub, J.], affd 15 AD3d 308 [1st Dept 2005] [CPLR art 78 proceeding challenging City’s environmental review; dismissed]); Landmark West! v Manhattan Borough Bd. (Sup Ct, NY County, Feb. 15, 2005, Beeler, J., Index No. 116913/2004 [declaratory judgment action challenging Borough Board’s approval of proposed sale, claiming insufficient notice; dismissed]); Landmark West! v City of New York (Sup Ct, NY County, *565 Mar. 29, 2005, Stallman, J., Index No. 117996/2004 [CPLR art 78 proceeding challenging City’s response to Freedom of Information Law request; denied]); Landmark West! v City of New York (Sup Ct, NY County, Sept. 1, 2005, Stall-man, J., Index No. 103689/2005 [action challenging building sale under public trust doctrine, Gift and Loan Clause of NY Const and NY City Charter §§ 383, 384; the instant action]); Landmark West! v Tierney (Sup Ct, NY County, Sept. 1, 2005, Stallman, J., Index No. 107387/2005 [CPLR art 78 proceeding to disqualify Landmarks Preservation Commissioner and bar communication with museum principals; decided simultaneously herewith]).

. Defendants withdrew their request for sanctions in a telephone conference with opposing counsel and the court.

. The history and architecture are discussed thoroughly in Matter of Landmark West! v Burden (3 Misc 3d 1102[A], 2004 NY Slip Op 50331[U], supra, *3 n 1).

. EDC is a local development corporation organized under section 1411 of the Not-For-Profit Corporation Law.

. Reactions to architecture, like all matters of aesthetics, are highly subjective. The litigation and larger public debate raise serious questions about the wisdom of the Commission’s internal, essentially private and effectively unreviewable decision that 2 Columbus Circle is not a worthy subject of a public hearing. Especially in retrospect, one may question, as plaintiffs do, whether that exercise of discretion may have affected the Commission’s reputation as a guardian and arbiter of New York City’s architectural heritage and undermined public confidence in the process. Those issues are fundamentally ones of aesthetics, public policy and agency culture, not issues of law, and cannot be decided by this court.

. No one named the Museum as a party to this case; no one raised its absence as an issue. As evidenced by the papers in Landmark West! v Tierney *567 {supra n 1), decided simultaneously herewith, the Museum knew this action was pending.

. By an order dated May 16, 2005, the court converted the motion to dismiss into a motion for summary judgment (CPLR 3211 [c]), gave notice to the parties, and set a briefing schedule for additional submissions. Plaintiffs’ procedural objections to defendants’ motion (see opposition mem at 10-15), which apply only to motions to dismiss, are rendered academic in light of the court’s conversion of the motion into a motion for summary judgment.

. Neither does collateral estoppel (issue preclusion) apply; no issues relating to a taxpayer action under General Municipal Law § 51 were necessarily decided in the action against the Manhattan Borough Board. (Buechel v Bain, 97 NY2d 295, 303 [2001].)

. In discussing the Gift and Loan Clause, the parties make no distinction between the City and the EDC, even though EDC is not a city agency. The proposed sale—from the City to EDC, then from EDC to the Museum—must be analyzed as one interrelated transaction.

. In light of the court’s determination, the court need not address defendants’ remaining arguments as to the budgeted funds.

. In June 2004, the building was appraised at a value of $15.2 million; the purchase price for the property is $17.05 million. (Smith affirmation K 17; see also Burger reply affirmation, exhibit C.) Although plaintiffs argue that the purchase price should be discounted to present value (opposition mem at 31), they cite no authority for such a proposition, nor show how the discounted price would fall below the appraised value.

. The frequent practice of using local development corporations to bypass procedural restrictions relating to public property suggests significant policy questions not before this court.

. Defendants also argue in passing that plaintiffs are barred by the doctrine of loches. (See mem at 14 n 4.) This argument is without merit. “Loches applies where there has been a considerable delay resulting in a change of position, intervention of equities, loss of evidence or other disadvantage.” (Klein v Gutman, 12 AD3d 417, 419-420 [2004].) Although defendants assert that the litigation delays the sale of the building, they cannot point to any change in their position as a result of the timing of this action.

. Under Real Property Law § 345, a possibility of reverter is generally extinguished automatically unless the owner of such a right records a declaration of intention to preserve that right, within 27 to 30 years after that right was created. (Order of Teachers of Children of God v Trustees of Estate Belonging to Diocese of Long Is., 260 AD2d 356, 357 [1999].) The statute does not apply to interests granted in favor of the state or subdivisions of the state. (Real Property Law § 345 [8].) Even if the statute applied here, extinction of the possibility of reverter is not at issue here because the time to record the grantor’s intention has not run.

. Defendants contend that, upon the City’s conveyance of the property to EDC, EDC’s reverter interest merges with the City’s fee title. This is incorrect. A fee simple determinable cannot merge with a possibility of reverter. (See 28 Am Jur 2d, Estates § 433.) Neither are defendants correct in their assumption that EDC’s reversionary interest was exercisable “at its option.” The deed clearly granted G & W a possibility of reverter, which is triggered automatically (see 5 Warren’s Weed, New York Real Property, Estates in Real Property § 47.05, supra) as distinguished from a right of entry (sometimes *575 referred to as a “right of reentry”), which requires the grantor to take appropriate action to retake title. (See 3 Thompson, Real Property § 25.04, supra.)

. The complaint does not name any officer of the City as a defendant. (See Stein v Brown, 125 Misc 692, 694 [1925] [“When an action is brought to restrain action in behalf of a municipality, the officers whose duty it is to perform the acts sought to be enjoined are proper and usually necessary parties”].) Neither does the record reflect that plaintiffs ever posted a bond, as the statute requires.

. After conferences with the court, the City wisely promised that it would neither close on the contract of sale, nor authorize work on the building facade before September 7, 2005. It would be preferable for the City and the Museum to agree not to alter the facade, at least until the Landmarks Preservation Commission publicly announces a decision on Landmark Westi’s request *576 for evaluation and on whether it will hold a public hearing. It would also be preferable for plaintiff Landmark West! and its allies to forbear from further litigation and extravagant rhetoric. The City, the Museum and plaintiffs, by deescalating the tension, can assist the Commission to do its work fairly and can conduct the continuing public debate thoughtfully.