Matter of Schulz v State of New York (2023 NY Slip Op 02575)

Matter of Schulz v State of New York

2023 NY Slip Op 02575

Decided on May 11, 2023

Appellate Division, Third Department

Pritzker, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 11, 2023

536104

[*1]In the Matter of Robert L. Schulz et al., Appellants,
v
State of New York et al., Respondents.

Calendar Date:March 30, 2023 

Before: Garry, P.J., Lynch, Pritzker, Reynolds Fitzgerald and McShan, JJ. 

Robert L. Schulz, Queensbury, appellant pro se.
Anthony Futia Jr., North White Plains, appellant pro se.
Joshua Trost, Wheatfield, appellant pro se.
William C. James, Amherst, appellant pro se.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for respondents.

Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (James P. Gilpatric, J.), entered July 20, 2022 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the petition/complaint, and (2) from an order of said court, entered August 9, 2022 in Albany County, which denied petitioners' motion to accept a sur-reply.
In March 2022, respondent Governor Kathy Hochul announced an agreement between respondent State of New York, Erie County and the Buffalo Bills to build a new stadium in the Town of Orchard Park, Erie County that is expected to cost $1.4 billion. The State's contribution of $600 million was included in the 2022-2023 budget bill for capital projects, which appropriated the funds to the Urban Development Corporation (hereinafter UDC) for services and expenses related to the development of the proposed stadium. Petitioners, four resident taxpayers, commenced this hybrid CPLR article 78 proceeding and declaratory judgment action alleging that the appropriations in the budget bill to UDC violate NY Constitution, article VII, § 8 (1), which prohibits the State from appropriating public funds in aid of a private undertaking. In addition, petitioners challenged part YY of the budget bill, which they contend "authoriz[ed]" Erie County to appropriate funds, and violated NY Constitution, article VIII, § 1 by using public funds in aid of a private undertaking. Respondents moved, pre-answer, to dismiss the complaint for failure to state a cause of action under CPLR 3211 (a) (7) arguing that the budget appropriations are constitutional. Petitioners opposed, and Supreme Court, in July 2022, dismissed the petition, relying primarily on Bordeleau v State of New York (18 NY3d 305 [2011]) and finding that appropriations to a public benefit corporation do not violate the prohibition on providing public funds, even in the aid of a private undertaking. In August 2022, the court also denied a motion filed by petitioners seeking to file a sur-reply on the grounds that, among other things, it was submitted after the court had rendered its decision. Petitioners appeal from the July 2022 judgment and the August 2022 order.[FN1]
Petitioners contend that Bordeleau v State of New York is inapplicable or incorrectly decided and that the appropriations of State funds to the UDC and use of Erie County funds for a new stadium violate the NY Constitution.[FN2] Before examining the constitutionality of the legislation authorizing the expenditures, a brief discussion of the UDC is warranted. The UDC is a public benefit corporation, created in 1968 by statute (see McKinney's Uncons Laws of NY § 6254 [1] [New York State Urban Development Corporation Act, as added by L 1968, ch 174, § 1, as amended]). Its enabling act contained legislative findings that it is "the policy of the state to promote a vigorous and growing economy" and that "there is a serious need throughout [*2]the state for adequate educational, recreational, cultural and other community facilities" (Uncons Laws § 6252). Accordingly, the UDC "may provide . . . the capital resources necessary" to build, rebuild, or otherwise improve such facilities (Uncons Laws § 6252). The UDC has broad authority to improve urban environments, including "provid[ing] for the construction, reconstruction, improvement, alteration or repair of any project" (Uncons Laws § 6255 [9]). A project includes a "[c]ivic project," which is defined as any facility designed for "the purpose of providing facilities for educational, cultural, recreational, community, municipal, public service or other civic purposes" (Uncons Laws § 6253 [6] [d]). Many civic projects also involve "private entities" (Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 258 [2010], cert denied 562 US 1108 [2010]), including former renovations to Rich Stadium, the same stadium which is the subject to this appeal (see L 1998, ch 387, §§ 2 [j]; 4). The stadium was originally built following the passage of chapter 252 of the Laws of 1968, the findings declaring the "very public purpose for which the stadium is authorized" — to provide "recreation, entertainment, amusement, education, enlightenment, [and] cultural enrichment" (Murphy v Erie County, 28 NY2d 80, 87 [1971], quoting L 1968, ch 252, §2).
We now turn to the constitutionality of the legislation authorizing the current expenditures. To begin, "[l]egislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt" (Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d 86, 92 [3d Dept 2022] [internal quotation marks and citations omitted]; see White v Cuomo, 38 NY3d 209, 216 [2022]). This presumption is "exceedingly strong" where a plaintiff challenges state expenditures designed to further the public interest (Bordeleau v State of New York, 18 NY3d at 313 [internal quotation marks and citation omitted]). In this regard, the Court of Appeals has "recognized the need for deference involving 'public funding programs essential to addressing the problems of modern life, unless such programs are patently illegal' " (id. [internal quotation marks omitted], quoting Schulz v State of New York, 84 NY2d 231, 241 [1994], cert denied 513 US 1127 [1995]). Significantly, "when a court reviews such a decision, it must operate on the rule that it may not substitute its judgment for that of the body which made the decision. Judges, however much they might disagree with the wisdom of the act under review, are not free to invalidate it on that ground" (Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y., 46 NY2d 358, 370 [1978] [citation omitted]). Nevertheless, as noted, the presumption is rebuttable, and an unconstitutional expenditure [*3]cannot abide (see generally Schulz v State of New York, 84 NY2d at 241).
As to the substantive controlling law, the NY Constitution establishes that "[t]he money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking" (NY Const, article VII, § 8 [1]).[FN3] "[T]he appropriate standard for resolving a challenge to an appropriation, whether under article VIII, § 1 or article VII, § 8 (1)," is that "an appropriation is valid where it has a predominant public purpose and any private benefit is merely incidental" (Bordeleau v State of New York, 18 NY3d at 317, 318; see Murphy v Erie County, 28 NY2d at 87-88). Moreover, "it is undisputed that article VII, § 8 (1) permits the granting of public funds to public benefit corporations for a public purpose" (Bordeleau v State of New York, 18 NY3d at 316) and expenditures for stadiums have expressly been found to have a public purpose (see e.g. Murphy v Erie County, 28 NY2d at 87-88). Further, "[b]ecause public benefit corporations[, like UDC,] benefit from a status separate and apart from the State, money passed to public corporations consequently cannot be subject to the article VII, § 8 (1) prohibition against gifting or loaning state money as such money is no longer in the control of the State" (Bordeleau v State of New York, 18 NY3d at 316 [emphasis added]).[FN4]
In support of their motion to dismiss, respondents submitted portions of the Capital Projects appropriations from the 2022-2023 budget bill, which provides $2,204,000 "for services and expenses related to the retention of professional football in Western New York" and $600 million "for services and expenses for athletic facilities related to professional football in Orchard Park," including the "demolition of existing facilities" and development and construction of the stadium. The appropriation also specifies that funds are subject to contractual agreement between Erie County Stadium Corporation and the Buffalo Bills. Respondents also submitted portions of part YY of the budget bill, which indicates that the development of the stadium is a "specific . . . purpose for which indebtedness may be contracted and serial bonds and bond anticipation notes of [Erie County] may be issued," but which does not appropriate any money from or to Erie County itself. In opposition to respondents' motion to dismiss, petitioners submitted a news article indicating that the Buffalo Bills is a private corporation, as well as a press release indicating that Erie County will contribute $250 million towards the stadium, with the State contributing $600 million and the Buffalo Bills contributing the remainder of the cost.
Initially, we find petitioners' challenges to the appropriations to the UDC unavailing since the expenditures are for a statutorily authorized purpose, i.e., a stadium rebuild (see Murphy v Erie County, 28 NY2d at 87-88; see e.g. L 1998, ch 387, § 1; L 1997, ch 432, § 13; L 1982, ch 459, § 1[*4]; L 1974, ch 699, § 4), and thus fall outside the prohibitions contained in article VII, § 8 (1).[FN5] Despite this, petitioners assert that the appropriations nevertheless violate article VII, § 8 (1) because they support a private undertaking. First, it is true that the appropriations will aid a private undertaking and, as such, petitioners' concerns are legitimate. However, it is equally true that sports stadiums serve a public purpose and, as recognized by the Legislature, "improve the quality of life for the state's citizens, create and retain jobs, attract business investment and enhance the state's reputation as a national or global destination" (L 1997, ch 432, § 21; see L 1998, ch 387, § 1; L 1982, ch 459, § 1; L 1974, ch 699, § 4). To this point, "an appropriation is valid where it has a predominant public purpose and any private benefit is merely incidental" (Bordeleau v State of New York, 18 NY3d at 317 [emphasis added]; see Murphy v Erie County, 28 NY2d at 87-88). Second, as noted by respondents, the constitutional prohibitions against gifts and loans do not apply to a one-time transfer of funds or property — whether to a public or private entity — that fulfills "a predominantly public purpose" (Bordeleau v State of New York, 18 NY3d at 318; see Murphy v Erie County, 28 NY2d at 84, 87-88; see Tribeca Community Assn. v New York State Urban Dev. Corp., 200 AD2d 536, 537 [1st Dept 1994], appeal dismissed 83 NY2d 905 [1994], lv denied 84 NY2d 805 [1994]). As the Court of Appeals held in Murphy v Erie County, the stadium in Erie County to be used by the Bills has "for its primary object a public purpose" (28 NY2d at 88 [internal quotation marks and citation omitted]). Thus, the appropriation of State funds to the UDC does not violate the NY Constitution.
We turn now to petitioners' claim that part YY of the budget bill violates article VII, § 1 of the NY Constitution. As a threshold matter, we note that Erie County is not a party and a declaratory judgment action can only decide "the rights and other legal relations of the parties to a justiciable controversy" (CPLR 3001). Further, part YY neither provides funds to an entity nor requires Erie County to do so; rather it clarifies and amends a 1968 law by providing that Erie County may issue bonds for the stadium (see L 2022, ch 56, part YY, § 1). Regardless, for the same reasons that petitioners' challenge to the State's appropriation to the UDC fails, so would such challenge to appropriations by Erie County. To the extent that Erie County appropriates money to the UDC, or any other public benefit corporation, those appropriations are not subject to the constitutional prohibition on gifting money to private entities (see Bordeleau v State of New York, 18 NY3d at 313, 315). To the extent that Erie County appropriates money directly to private parties for the stadium project, we find that those appropriations are similarly not barred by that constitutional prohibition because, as detailed above[*5], the stadium fulfills a predominantly public purpose (see id. at 319; Murphy v Erie County, 28 NY2d at 87-88).
Finally, respondents contend that Supreme Court should not have dismissed petitioners' claims but, rather, should have issued a declaration in respondents' favor and that this Court should modify the judgment accordingly.[FN6] We agree. "Upon [a pre-answer motion to dismiss a declaratory judgment action], a court may reach the merits of a properly pleaded cause of action for a declaratory judgment where no questions of fact are presented by the controversy[ and, u]nder such circumstances, the motion to dismiss the cause of action for failure to state a cause of action should be taken as a motion for a declaration in the defendant's favor and treated accordingly" (Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 124 [3d Dept 2022] [internal quotation marks and citations omitted]). Given that there are no questions of fact, the judgment will be modified by reversing the dismissal of the complaint and instead granting a declaration in favor of respondents that the challenged appropriations do not violate the NY Constitution.
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the petition/complaint; it is declared that the appropriations in the 2022-2023 budget bill to the Urban Development Corporation do not violate NY Constitution, article VII, § 8 (1) and that part YY of the budget bill does not violate NY Constitution, article VIII, § 1; and, as so modified, affirmed.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Inasmuch as petitioners fail to raise any specific arguments with regard to the August 2022 order, the appeal therefrom has been abandoned (see Davis v Zeh, 200 AD3d 1275, 1277 n 2 [3d Dept 2021]).
Footnote 2: Petitioners also contend that these "public financing scheme[s]" violate various protections provided by the US and NY Constitutions and assert that Supreme Court's decision "is a judicial act to overthrow the republican form of government." However, inasmuch as petitioners did not raise these claims in their petition or in opposition to the motion to dismiss, they are unpreserved for review by this Court (see generally Burns v Childress, 189 AD3d 1939, 1940 n 2 [3d Dept 2020]). In any event, we do not find this argument persuasive as nothing alleged here indicates a lack of representative government or the violation of a republican form of government (see generally Rucho v Common Cause, 588 US ___, ___, 139 S Ct 2484, 2506 [2019]) inasmuch as the provision of appropriations such as these "do not pose any realistic risk of altering the form or the method of functioning of New York's government" (New York v United States, 505 US 144, 186 [1992]).

Footnote 3: "Article VIII, § 1 is the local analogue to article VII, § 8 (1), prohibiting local governments from giving or loaning any money to private recipients or giving or lending their credit to private or public corporations" (Bordeleau v State of New York, 18 NY3d at 317 n 3).
Footnote 4: The "control" language must be read in context and does not mean, as was asserted by the petitioners in Bordeleau (see 18 NY3d at 321 [Pigott, J., dissenting]) and again by petitioners in the case at hand, that the State is achieving something indirectly, through the UDC, which cannot be done directly, i.e., unconstitutional gifting. From a constitutional perspective, form must never govern over substance, and if an expenditure does not predominantly further a public purpose it would not become constitutional just because it was funneled through the UDC. Here, the constitutional prohibition simply does not apply in the first instance because the State, by way of the UDC, is acting to further a public purpose. Indeed, the "prime purpose for creating such corporations was to separate their administrative and fiscal functions from the State and its subdivisions" (Bordeleau v State of New York, 18 NY3d at 315 [internal quotation marks and citation omitted]), and to enable these corporations to "function with a freedom and flexibility" not permitted to the State (Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423 [1959]).This concept was codified early on; "the 1938 Constitution not only recognized the viability of public benefit corporations, but also limited the prohibition of giving or loaning state money to any private corporation or association, or private undertaking, rather than the former, broader prohibition in aid of any association, corporation or private undertaking" (Bordeleau v State of New York, 18 NY3d at 316 [internal quotation marks and citation omitted; emphasis added]; compare Develop Don't Destroy [Brooklyn], Inc. v Empire State Dev. Corp., 41 Misc 3d 779, 786 [Sup Ct, New York County 2013]).

Footnote 5: To the extent petitioners assert that the UDC's authority "does not extend to the project at issue," petitioners failed to raise this claim below and, as such, it is unpreserved for review by this Court (see generally Emerson v KPH Healthcare Servs, Inc., 203 AD3d 1272, 1275 n [3d Dept 2022]). Were it properly before us, we would find it without merit as the UDC has the statutory power to "acquire, construct [or] reconstruct . . . recreational . . . facilities" (Uncons Laws § 6252).

Footnote 6: It is of no moment that respondents have not appealed from the order on appeal as they were not aggrieved thereby and, accordingly, would not be permitted to cross-appeal (see Matter of Atlantic Power & Gas LLC v New York State Pub. Serv. Commn., 203 AD3d 1352, 1354 n [3d Dept 2022]). Moreover, this Court has issued declarations in this situation where respondents are not the appealing party (see generally Matter of Schulz v Pataki, 272 AD2d 758, 761 [3d Dept 2000], appeal dismissed 95 NY2d 886 [2000], lv denied 95 NY2d 769 [2000]; Kradjian v City of Binghamton, 104 AD2d 16, 19 [3d Dept 1984], appeal dismissed 64 NY2d 1039 [1985]).