[960 NE2d 917, 937 NYS2d 126]

Lee Bordeleau et al., Respondents, v State of New York et al., Appellants.

Argued and submitted October 12, 2011; decided November 21, 2011

## POINTS OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Barbara D. Underwood, Paul Groenwegen* and *Andrew D. Bing* of counsel), for State of New York, appellant. I. Appropriations for the public purpose of promoting economic development do not contravene article VII, § 8 of the State Constitution. (*Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120; *Wein v State of New York*, 39 NY2d 136; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Comereski v City of Elmira*, 308 NY 248; *Schulz v State of New York*, 84 NY2d 231; *People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Murphy v Erie County*, 28 NY2d 80; *Denihan Enters. v O'Dwyer*, 302 NY 451; *Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536, 83 NY2d 905; *Matter of Schulz v Warren County Bd. of Supervisors*, 179 AD2d 118.) II. The appropriations to the New York State Urban Development Corporation are also lawful because the Constitution permits gifts of State funds to a public corporation. (*Wein v State of New York*, 39 NY2d 136; *Schulz v State of New York*, 84 NY2d 231; *Town of Rye v Union Free School Dist.*, 280 NY 469; *Comereski v City of Elmira*, 308 NY 248; *Wein v City of New York*, 36 NY2d 610; *Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth.*, 5 NY2d 420.) III. The appropriations provided funding for expenditures made for services rendered or other consideration. (*Matter of Signacon Controls v Mulroy*, 32 NY2d 410; *McKenzie v Harrison*, 120 NY 260; *Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536.)

*Greenberg Traurig, LLP*, Albany (*Harold Iselin, Cynthia E. Neidl* and *Victoria P. Lane* of counsel), for Globalfoundries U.S., Inc., appellant. I. With regard to funding for projects designed to be in the public interest, courts are required to exercise a large measure of restraint. (*Godfrey v Spano*, 13 NY3d 358; *McNeary v Niagara Mohawk Power Corp.*, 286 AD2d 522; *Rovello v Orofino Realty Co.*, 40 NY2d 633; *Allen v City of New York*, 49 AD3d 1126; *Guggenheimer v Ginzburg*, 43 NY2d 268; *Rivietz v Wolohojian*, 38 AD3d 301; *Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443; *Cohen v State of New York*, 94 NY2d 1;

*Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Wein v City of New York*, 36 NY2d 610.) II. Plaintiffs lack standing to challenge the Empire State Development Corporation appropriations. (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761; *Schulz v State of New York*, 193 AD2d 171; *Wein v Comptroller of State of N.Y.*, 46 NY2d 394; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579; *Matter of Colella v Board of Assessors of County of Nassau*, 95 NY2d 401.) III. Plaintiffs' conclusory allegations concerning the Empire State Development Corporation appropriations and grant fail to state a claim. (*Godfrey v Spano*, 13 NY3d 358; *Wein v City of New York*, 36 NY2d 610; *Comereski v City of Elmira*, 308 NY 248; *Rivietz v Wolohojian*, 38 AD3d 301.) IV. The Empire State Development Corporation appropriations and grant do not violate New York Constitution, article VII, § 8 because they involve neither the money nor the credit of the State and are neither a gift nor a loan. (*Schulz v State of New York*, 84 NY2d 231; *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund*, 22 NY2d 119; *Wein v State of New York*, 39 NY2d 136; *Comereski v City of Elmira*, 308 NY 248; *Yonkers Community Dev. Agency v Morris*, 37 NY2d 478; *Matter of West 41st St. Realty v New York State Urban Dev. Corp.*, 298 AD2d 1; *New York State Urban Dev. Corp. v Vanderlex Mdse. Co.*, 98 Misc 2d 264; *Matter of Signacon Controls v Mulroy*, 32 NY2d 410; *McKenzie v Harrison*, 120 NY 260; *Matter of La Barbera v Town of Woodstock*, 29 AD3d 1054.)

*Cravath, Swaine & Moore LLP*, New York City (*Teena-Ann V. Sankoorikal* and *Evan R. Chesler* of counsel), and *Alec S. Berman*, White Plains, for International Business Machines Corporation, appellant. I. The pleading fails to state a cause of action and dismissal is appropriate under CPLR 3211 (a) (7). (*Held v Kaufman*, 91 NY2d 425; *Schulz v State of New York*, 84 NY2d 231; *Leon v Martinez*, 84 NY2d 83; *Mark Hampton, Inc. v Bergreen*, 173 AD2d 220, 80 NY2d 788; *Maas v Cornell Univ.*, 94 NY2d 87; *Weimer v City of Johnstown*, 249 AD2d 608; *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314.) II. The Appellate Division erred as a matter of law in reversing the Supreme Court's order dismissing the first cause of action. (*Wein v State of New York*, 39 NY2d 136; *People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Schulz v State of New York*, 84 NY2d 231; *Comereski v City of Elmira*, 308 NY 248; *Matter of Smith v Levitt*, 30 NY2d 934; *Arker Cos. v New York State Urban Dev. Corp.*, 47 AD3d 739; *Matter of Plumbing, Heating,*

*Piping & A.C. Contrs. Assn. v New York State Thruway Auth.*, 5 NY2d 420; *Matter of Levy v City Commn. on Human Rights*, 85 NY2d 740; *Collins v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 361; *Matter of Goldstein v New York State Urban Dev. Corp.*, 64 AD3d 168.)

*Lippes Mathias Wexler Friedman LLP*, Buffalo (*Thomas J. Gaffney, Kevin J. Cross* and *Kenneth R. Kirby* of counsel), for West Genesee Hotel Associates, appellant. I. The Supreme Court correctly determined, as a matter of law based on documentary evidence, that the state's main or primary object for appropriating funds to Empire State Development Corporation for it to assist in the funding of the upgrading, refurbishment and renovation of Hyatt-Regency Hotel in downtown Buffalo was for the public purposes or benefits of enhancing the Buffalo region's marketability as a convention venue and destination, thereby increasing the publicly-owned Buffalo and Niagara convention center's convention business, increasing economic activity in Buffalo and the surrounding region, and/or creating or retaining New York State jobs; all, as opposed to gifting state money to West Genesee Hotel Associates without any corresponding public benefit(s) or purpose(s); hence, the plaintiffs' first cause of action was correctly dismissed by the Supreme Court. (*Matter of Froslid v Hults*, 20 AD2d 498, 14 NY2d 722, 756; *Matter of La Barbera v Town of Woodstock*, 29 AD3d 1054, 7 NY3d 844; *Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ., Cent. High School Dist. No. 3, Nassau County]*, 34 AD2d 351; *Matter of Goldstein v New York State Urban Dev. Corp.*, 64 AD3d 168, 13 NY3d 511; *Vitucci v New York City School Constr. Auth.*, 289 AD2d 479; *Sunrise Props. v Jamestown Urban Renewal Agency*, 206 AD2d 913; *Matter of Palmateer v Greene County Indus. Dev. Agency*, 38 AD3d 1087; *Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536; *Matter of Humane Socy. of U.S. v Empire State Dev. Corp.*, 53 AD3d 1013; *Matter of Glen Cove Community Dev. Agency [Ardaas, Inc.]*, 259 AD2d 750.) II. The state's funding of the Empire State Development Corporation should be upheld, as legislative acts enjoy a presumption of legality. (*Matter of Froslid v Hults*, 20 AD2d 498; *Schulz v State of New York*, 84 NY2d 231; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Wein v State of New York*, 39 NY2d 136; *Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235; *Matter of Goldstein v New York State Urban Dev. Corp.*, 64 AD3d 168, 13 NY3d 511; *De Matteis v Town of Hempstead*, 286 App Div 1025; *Waterloo Woolen Mfg. Co. v Shanahan*, 128 NY

345; *Matter of Hicks Dev. Corp. v Incorporated Vil. of Lawrence*, 282 App Div 1048, 306 NY 922; *City of Utica v Damiano*, 22 Misc 2d 804.) III. Neither plaintiffs nor their expert raised a genuine issue of fact, and plaintiffs' expert applied an incorrect test to the challenged appropriations. (*Schulz v State of New York*, 160 Misc 2d 741; *Washington Mut. Bank, F.A. v SIB Mtge. Corp.*, 21 AD3d 953.) IV. The cases relied upon by the Appellate Division are distinguishable, inapposite, or inconsistent with more recent precedent. (*People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Schulz v State of New York*, 84 NY2d 231; *Wein v State of New York*, 39 NY2d 136; *Murphy v Erie County*, 28 NY2d 80; *Matter of County of Erie v Kerr*, 49 AD2d 174; *Matter of Froslid v Hults*, 20 AD2d 498; *Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536, 83 NY2d 905; *Schulz v State of New York*, 160 Misc 2d 741; *Matter of Schulz v State of New York*, 86 NY2d 225.) V. There are alternative grounds for affirming dismissal of the complaint against West Genesee. (*People v Carroll*, 3 NY2d 686; *Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482; *Matter of Padwee v Lustenberger*, 226 AD2d 897; *Panetta v Tonetti*, 182 AD2d 977; *Schulz v State of New York*, 84 NY2d 231; *Wein v State of New York*, 39 NY2d 136; *People v Ohrenstein*, 77 NY2d 38; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761; *Huron Group, Inc. v Pataki*, 5 Misc 3d 648, 23 AD3d 1051, 6 NY3d 803; *Matter of Schulz v De Santis*, 218 AD2d 256.) VI. The Supreme Court's dismissals of the plaintiffs' second and third causes of action are not properly before this Court; however, if the said dismissals are reviewed, they were correct. (*Royal v Brooklyn Union Gas Co.*, 122 AD2d 132; *Saxton v Carey*, 44 NY2d 545.)

*James M. Ostrowski*, Buffalo, for respondents. I. The Constitution bans cash grants to private firms for economic development. (*Wein v State of New York*, 39 NY2d 136; *People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Smith v Smythe*, 197 NY 457; *Murphy v Erie County*, 28 NY2d 80; *Matter of Schulz v State of New York*, 86 NY2d 225; *People v Ohrenstein*, 77 NY2d 38; *Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536; *Matter of Schulz v Warren County Bd. of Supervisors*, 179 AD2d 118; *Matter of Palmateer v Greene County Indus. Dev. Agency*, 38 AD3d 1087; *Schulz v State of New York*, 84 NY2d 231.) II. There is no convention center exception to the ban on subsidies. (*Matter of Froslid v Hults*, 20 AD2d 498; *Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ., Cent. High School Dist. No. 3,*

*Nassau County]*, 34 AD2d 351.) III. The state cannot avoid the ban on cash grants to private firms by laundering the money through a public corporation. (*Wein v State of New York*, 39 NY2d 136; *People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Comereski v City of Elmira*, 308 NY 248; *Schulz v State of New York*, 84 NY2d 231; *Matter of Smith v Levitt*, 30 NY2d 934; *Matter of Schulz v Pataki*, 272 AD2d 758; *John Grace & Co. v State Univ. Constr. Fund*, 44 NY2d 84.) IV. A promise to engage in economic development is not adequate consideration for a cash grant. (*Matter of Schulz v State of New York*, 86 NY2d 225; *People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465; *Van Curler Dev. Corp. v City of Schenectady*, 59 Misc 2d 621; *Matter of La Barbera v Town of Woodstock*, 29 AD3d 1054; *Admiral Realty Co. v City of New York*, 206 NY 110; *Matter of Antonopoulou v Beame*, 32 NY2d 126.) V. The defendants failed to demonstrate that cash grants to private firms serve a public purpose. VI. The plaintiffs have overcome the presumption of constitutionality. VII. There is an issue of fact whether cash grants to private firms serve a public purpose. (*Denihan Enters. v O'Dwyer*, 302 NY 451.) VIII. The plaintiffs have standing. IX. The complaint contains sufficient detail to allow the defendants to prepare a defense.

## OPINION OF THE COURT

JONES, J.

The issue before this Court is whether plaintiffs' challenge to appropriations in the New York State 2008-2009 budget, pursuant to article VII, § 8 (1) of the New York State Constitution, can survive a motion to dismiss. We conclude that it cannot.

Plaintiffs, a group of 50 taxpayers of the State of New York, commenced this declaratory judgment action against the State, New York State Urban Development Corporation (UDC) doing business as Empire State Development Corporation (ESDC), International Business Machines Corporation (IBM), Advanced Micro Devices, Inc., West Genesee Hotel Associates, American Axle & Manufacturing, Inc., among other defendants, challenging numerous loans and grants issued by public defendants to private entity defendants and other private companies in order to stimulate economic development. Plaintiffs broadly allege that certain grants to private entities violate the constitutional ban on gifts of state monies to private firms. More specifically, they challenge the State's practice of designating state funds for the purpose of economic development as unconstitutional.

The challenged appropriations fall into two general categories. The vast majority were state appropriations to the UDC, a public benefit corporation, to fund payments to private entities for public development purposes.[1] Projects falling within this classification include the expansion of semiconductor manufacturing facilities at the University of Albany Nanotech Complex and the Globalfoundries U.S., Inc. (formerly Advanced Micro Devices) project in Malta, Saratoga County. The second category of appropriations listed in the complaint addresses funds allocated to the State Department of Agriculture and Markets to fund contracts with not-for-profit corporations for the purpose of marketing and promoting New York agricultural products. In particular, the complaint identifies appropriations designated for the New York State Apple Growers Association, New York Wine and Grape Foundation and Long Island Wine Council.

State defendants, IBM, Advanced Micro Devices, West Genesee Hotel Associates, and American Axle & Manufacturing, Inc. moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) as barred by documentary evidence and CPLR 3211 (a) (7) for failure to state a cause of action. Supreme Court granted defendants' motion and dismissed the complaint (22 Misc 3d 1131[A], 2009 NY Slip Op 50380[U] [2009]). Plaintiffs appealed.

The Appellate Division modified Supreme Court by reversing so much thereof as granted defendants' motions to dismiss the first cause of action (74 AD3d 1688 [2010]). The court rejected the defendants' argument that the State may grant public funds to public benefit corporations for public-private partnerships or for projects to spur economic development in the State. The court granted defendants' motion for leave to this Court and certified the following question:

---

**1.** The UDC was created in 1968 by the New York State Urban Development Corporation Act (*see* McKinney's Uncons Laws of NY § 6254). The legislative findings emphasized that

"[i]t is hereby declared to be the policy of the state to promote a vigorous and growing economy, to prevent economic stagnation and to encourage the creation of new job opportunities in order to protect against the hazards of unemployment, reduce the level of public assistance to now indigent individuals and families, increase revenues to the state and to its municipalities and to achieve stable and diversified local economies" (McKinney's Uncons Laws of NY § 6252).

The Act created the Empire State Economic Development Fund and the JOBS Now Program, which authorize the UDC to make grants and loans for economic development purposes (*see* McKinney's Uncons Laws of NY §§ 6266-h, 6266-i).

"Did this Court err, as a matter of law, in modifying, on the law, the order of the Supreme Court by reversing so much of the order which granted defendants' motions to dismiss the first cause of action, and remitting the matter to the Supreme Court for further proceedings no[t] inconsistent with this Court's decision and, as so modified, affirming the order?" (2010 NY Slip Op 82494[U] [2010]).

We now reverse and answer the question in the affirmative.

At the outset, we observe that plaintiffs' "burden is a heavy one" (*Schulz v State of New York*, 84 NY2d 231, 241 [1994] [*Schulz I*]). It is well established that "enactments of the Legislature—a coequal branch of government—enjoy a strong presumption of constitutionality" (*id.*). In this case, plaintiffs' burden is "exceedingly strong" because they challenge public expenditures designed in the public interest (*Wein v State of New York*, 39 NY2d 136, 145 [1976]). Indeed, we have recognized the need for deference involving "public funding programs essential to addressing the problems of modern life, unless such programs are 'patently illegal' " (*Schulz I*, 84 NY2d at 241). As such, unconstitutionality must be proven beyond a reasonable doubt.

Article VII, § 8 (1) of the State Constitution broadly declares, in relevant part,

"[t]he money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking."

This provision contains two separate prohibitions: first, it precludes the State from giving or loaning "money" to private recipients and, second, it more broadly forbids the State from giving or lending its "credit" to private recipients or public corporations. Hence, while the State may not lend its credit to a public corporation, such as the UDC, nothing in article VII, § 8 (1) prohibits the State from adopting appropriations directed to such public entities. Before addressing the specific arguments of the parties, it is helpful to briefly trace the history of article VII, § 8 (1).

In 1846, the voters of the State of New York amended the Constitution to prevent the giving or lending of the State's credit to private corporations (*see Wein*, 39 NY2d at 143-144; *see*

*also People v Ohrenstein*, 77 NY2d 38, 50 [1990]). At issue then was the State's "prior practices of subsidizing private railroad and canal companies through long-term State debt obligations" (*Matter of Schulz v State of New York*, 86 NY2d 225, 233 [1995] [*Schulz II*]). Such practices "produced a fiscal crisis for the State government" when those companies failed and the State was forced to pay their debts (*Ohrenstein*, 77 NY2d at 50; *see also Shulz I*, 84 NY2d at 241-242 ["Of particular concern, and the impetus for change, was the lending of public credit to private, 'irresponsible' corporations. Following the onset of economic depression in 1837, private railroad corporations defaulted on obligations that had been assumed on the strength of liberally granted State credit. The State assumed the liabilities, with no hope of reimbursement, and by 1845 more than three fifths of the entire State debt was the result of such loans"]). It is therefore clear that the disbursement of public funds to cover the debts of private corporations led directly to the adoption of that constitutional amendment.

The 1846 Constitution, however, did not bar gifts of state money because, as this Court recognized over a century later, the granting of state money was a one-time event that "does not bind future generations or create the same dangers of collapse, insolvency and crisis associated with the abuse of credit" (*Schulz I*, 84 NY2d at 246). Nevertheless, the constitutional prohibition was later expanded in the 1874 Amendments to the Constitution to preclude the giving and lending of public money to aid any private entity or undertaking (*see Ohrenstein*, 77 NY2d at 50 ["Neither the credit nor the money of the State shall be given or loaned to aid or in aid of any association, corporation or private undertaking (former art VIII, § 9)"]). The purpose of that amendment was to prevent the State's practice of freely granting "public funds to railroads and to charitable associations" (*People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465, 473 [1921]) because a concern had arisen regarding the inability of the State to "superintend the expenditure of the money, or even control it, so far as to compel its use for the purposes for which it was appropriated" (1873 NY Senate Doc No. 70, at 39).

More than 60 years later, the Constitutional Convention of 1938 combined the two separate provisions dealing with gifts or loans of state money and credit into article VII, § 8 (para 1). The 1938 Constitution also amended the scope of the prohibition against giving or lending the State's credit, for the first

time making it applicable to public corporations (*see Wein*, 39 NY2d at 144 [explaining that the newly broadened credit provision "was intended to protect the State from the uncertain and possibly disastrous consequences of incurring future contingent liabilities, liabilities easy for a current generation to project but a burden on future generations"]). The 1938 Constitution, however, did not extend the prohibition against the giving or loaning of the State's money, which continues to apply only to private recipients. The constitutional provision at issue has remained essentially unchanged since 1938.[2] Against this backdrop, we turn to the parties' contentions.

■ Defendants contend that the first category of the challenged appropriations—those given to the ESDC to expend for its statutorily authorized purposes, including economic development—falls outside the scope of article VII, § 8 (1) because that provision permits gifts and loans of money to public benefit corporations. Characterizing public benefit corporations as "agencies of the State," plaintiffs counter that State defendants have given or are about to give, and that private defendants have received or are about to receive, state funds as gifts. Plaintiffs highlight certain grants designated to private corporations by the ESDC. At bottom, plaintiffs claim, and the dissent agrees, that the appropriations to the ESDC are unconstitutional because the State may not achieve indirectly that which cannot be done directly. We believe that defendants have the more accurate argument.

With an apparent goal to "insulate the State from the burden of long-term debt," the Legislature, beginning in 1921, created "legally separate public benefit corporations, known as public authorities, to discharge particular functions" (*Schulz I*, 84 NY2d at 244). "[A] prime purpose for creating such corporations was to separate their administrative and fiscal functions from the State and its subdivisions" (*Collins v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 361, 367-368 [1984]). Essentially, these public benefit corporations serve "to 'protect the State from liability and enable public projects to be carried on free from restrictions otherwise applicable' " (*Schulz I*, 84 NY2d at 244 [internal quotation marks omitted]; *see Collins*, 62 NY2d at 369, quoting *Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth.*, 5

_____

2. In 1961, subdivision (3) of this provision was added to ease the limitations on the use of state loans for job creation purposes.

NY2d 420, 423 [1959] ["Although created by the State and subject to dissolution by the State, these public corporations are independent and autonomous, deliberately designed to be able to function with a freedom and flexibility not permitted to an ordinary State board, department or commission"]).

It is well settled that "public benefit corporations exist[ ] independently of the State" (*Schulz I*, 84 NY2d at 246). This Court has "consistently recognized public authorities as legal entities separate from the State, enjoying an existence separate and apart from the State, its agencies and political subdivisions" (*id.* at 246 n 4). And significantly, it is undisputed that article VII, § 8 (1) permits the granting of public funds to public benefit corporations for a public purpose (*Wein*, 39 NY2d at 140; *see also Schulz I*, 84 NY2d at 246 ["While the provision bars the State from lending its 'credit' to a public corporation, the State is nonetheless free to give money to a public authority and to commit itself to giving future gifts"]). These two principles do not, however, stand alone as both have been recognized since the inception of public authorities.

Concurrent with their status as entities separate from the State, the ability of public authorities and public benefit corporations to receive public funds was acknowledged in *Matter of Dormitory Auth. of State of N.Y. (Span Elec. Corp.)* (18 NY2d 114 [1966]). And in *Schulz I*, we noted that the Constitution of 1938 accepted the creation of the "new vehicle" devised by the Legislature by giving "full recognition to the existence of public benefit corporations, their independent capacity to contract debt, and the continued power of the State to make gifts of money to those authorities" (*Schulz I*, 84 NY2d at 244, 246). More specifically, the 1938 Constitution not only recognized the viability of public benefit corporations, but also limited the prohibition of giving or loaning state money to "any private corporation or association, or private undertaking," rather than the former, broader prohibition "in aid of any association, corporation or private undertaking" (NY Const, art VII, § 8 [1]; former art VIII, § 9; *see* Quirk and Wein, *A Short Constitutional History of Entities Commonly Known as Authorities*, 56 Cornell L Rev 521, 577, 579 [1971]). Because public benefit corporations benefit from a status separate and apart from the State, money passed to public corporations consequently cannot be subject to the article VII, § 8 (1) prohibition against gifting or loaning state money as such money is no longer in the control of the State (*see generally Matter of New York Pub. Interest Research*

*Group v New York State Thruway Auth.*, 77 NY2d 86 [1990] [rejecting arguments as to the State's control over a public authority's funds]).

There is no doubt that the constitutional limitations at issue serve to prevent improvident fiscal decision-making and preferential treatment (*see Westchester County*, 231 NY at 474). Such concerns were the subject of debate during the 1938 Constitutional Convention. But the Convention and subsequent ratification of the amendments by the electorate demonstrated the approval for the ability of public benefit corporations to receive and expend public monies, enable the development and performance of public projects and be independent of the State (*see Problems Relating to Executive Administration and Powers*, 1938 Rep of NY Constitutional Convention Comm, vol 8, at 325-326 [the Poletti Report]; *Schulz I*, 84 NY2d at 246). Thus, plaintiffs cannot challenge the grants at issue by a public benefit corporation, like the UDC, under article VII, § 8 (1) of the State Constitution. Consequently, even viewing the complaint in a light most favorable to plaintiffs (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), it is insufficient to proceed against defendants under the first challenged category of appropriations.

Turning to the narrower second category—involving appropriations to the State Department of Agriculture and Markets to fund agreements with not-for-profit organizations for the promotion of agricultural products grown or produced in New York, namely apple and grape crops and products—defendants contend that the complaint fails to state a claim even though such funds were given directly by the State to private recipients. Relying on *Murphy v Erie County* (28 NY2d 80 [1971]), defendants assert that an appropriation is valid where it has a predominant public purpose and any private benefit is merely incidental. Again, we agree.

In *Murphy*, the county issued bonds to finance the construction of a stadium that would be leased to, or managed by, a private entity. The transaction was challenged under article VIII, § 1 of the New York State Constitution[3] on the basis of a claim that by giving control over the stadium to a private management company "and not retaining any right to use the facility, the county converted the stadium into a private use for

---

**3.** Article VIII, § 1 is the local analogue to article VII, § 8 (1), prohibiting local governments from giving or loaning any money to private recipients or giving or lending their credit to private or public corporations.

[the private entity's] benefit" (*id.* at 87). We rejected the constitutional claim, reasoning that although a private firm "will also derive a benefit from" the transaction, the stadium would serve a "very public purpose" (*id.*). The Court distinguished *Westchester County*—the 1921 precedent upon which the dissent hinges its analysis—on the basis that the benefit of the challenged expenditure in that case "accrued only to a private party" (*id.* at 88). We held that "an incidental private benefit" will not "invalidate a project which has for its primary object a public purpose" (*id.* [internal quotation marks omitted]).

█ We conclude that *Murphy*, not *Westchester County*, provides the appropriate standard for resolving a challenge to an appropriation, whether under article VIII, § 1 or article VII, § 8 (1). Here, the very purpose of the Department of Agriculture and Markets is to obtain specialized marketing services to promote a major industry in New York—the agriculture industry—for the overall benefit of the public and the State's competitiveness to foster growth in this important sector of the State's economy (*see* Agriculture and Markets Law § 3). Moreover, the Department is authorized to assist in the promotion and marketing of New York's wine and fruit products (*see* Agriculture and Markets Law § 16 [2-b]). The appropriations at issue here, which provide funding for contracts between the Department and the New York State Apple Growers Association, New York Wine and Grape Foundation and Long Island Wine Council, all fulfill a predominantly public purpose and are not prohibited under article VII, § 8 (1).

In sum, we find no constitutional infirmity to the challenged appropriations. Although some, like plaintiffs and the dissent, may question the wisdom of the policy choices, "the Legislature has made a valid legislative judgment" (*Dalton v Pataki*, 5 NY3d 243, 272 [2005]; *see also Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp.*, 2 NY3d 524, 528 [2004] ["The wisdom of this legislation is not a matter for this Court to address"]).

Accordingly, the order of the Appellate Division should be reversed, with costs, the first cause of action of plaintiffs' complaint dismissed, and the certified question answered in the affirmative.

PIGOTT, J. (dissenting). Unconstitutional acts do not become constitutional by virtue of repetition, custom or passage of time.

But that is what the majority opinion holds today. The arguments made by these defendants are precisely the kind of claims that sully taxpayers' view of our state government. It is unfortunate that the majority gives credence to those arguments and, as a result, deprives these plaintiffs—50 New York State taxpayers who are attempting to exercise their right to air their grievances—of an opportunity to conduct the most basic discovery to support their claims.

Far from being complex, article VII, § 8 (1) of the New York State Constitution (the Gift Clause) explicitly forbids what plaintiffs claim the State defendants are doing in this case. It states:

> "*1. The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking*; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking, but the foregoing provisions shall not apply to any fund or property now held or which may hereafter be held by the state for educational, mental health or mental retardation purposes" (emphasis supplied).

According plaintiffs' complaint a fair reading, it is clear that they assert that money of the State is being "given or loaned to or in aid of . . . private corporation[s]" for the purpose of economic development. Defendants' assertion that the appropriations serve the "public purpose of promoting economic development" contravenes not only our case law but the underlying purpose of the Gift Clause itself. Our State Constitution's prohibition against giving or loaning money to private corporations dates back to 1874,[1] when the citizenry adopted an amendment that read, in pertinent part, as follows: "[**Credit or money of the State not to be given.**] Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking" (1846 NY Const, art VIII, § 10, as amended by Const Amends of 1874 [emphasis supplied]; *Problems Relating to Taxation and Finance*, 1938 Rep of

---

1. The prohibition against loaning the *credit* of the state "to, or in aid of any individual, association or corporation" goes back even farther, to 1846 (1846 NY Const, art VII, § 9). That prohibition was, in part, in response to the state utilization of the public credit to finance failing and/or insolvent private railroads (*see* 2 Lincoln, Constitutional History of New York, at 91-101, 179-182, 552 [1994]).

NY Constitutional Convention Comm, vol 10, at 114). We examined that amendment in *People v Westchester County Natl. Bank of Peekskill, N.Y.* and, although that case involved the gift of the State's *credit* to soldiers who served during World War I, not to satisfy an obligation owed to them but rather as a gratuity, I find the Court's interpretation of that amendment instructive to defendants' collective arguments here that the Empire State Development Corporation's (ESDC) distribution of taxpayer dollars to private corporations should be upheld as serving a public purpose:

> *"Whether the purpose [of the gift or loan of credit] is a public one . . . is no longer the sole test as to the proper use of the state's credit.* Such a purpose may not be served in one particular way. However important, however useful the objects designed by the [L]egislature, they may not be accomplished by a gift or a loan of credit to an individual or to a corporation. It will not do to say that the character of the act is to be judged by its main object—that because the purpose is public, the means adopted cannot be called a gift or a loan. To do so would be to make meaningless the provision adopted by the convention of 1846. Gifts of credit to railroads served an important public purpose. That purpose was distinctly before the [L]egislatures that made them. Yet they were still gifts and so were prohibited" (231 NY 465, 475 [1921] [emphasis supplied]).

Perhaps most telling is that Judge Cardozo disagreed with the majority's holding that the proposed payments to the returning soldiers violated the Gift Clause, and elucidated that the true purpose of the clause was not to prohibit the Legislature from pledging the credit of the State "in recognition of an honorable obligation" but rather "was to put an end to the use of the credit of the state in fostering the growth of private enterprise and business" (*id.* at 483-484 [Cardozo, J., dissenting]). And this is what plaintiffs have asserted in their complaint. The fact that the *Westchester County Natl. Bank* case dealt with the gift of credit as opposed to a gift of money is irrelevant; it is evident from that case that, even if the Legislature had proposed paying cash to the World War I veterans instead of using the State's bonding authority, the outcome would have been the same, because the issue was whether the issuance of bonds on behalf of the veterans was a gift, irrespective of its form.

In 1967, the voters rejected a proposed amendment to the State Constitution that would have allowed the distribution of funds to private businesses for the purpose of economic development in the same manner the ESDC is distributing funds now. The proposed (and subsequently rejected) amendment stated as follows:

> "The state, any local government and any other *public corporation* may grant to any person, association or *private corporation* in any year or periodically by contract, or loan its money for *economic and community development purposes*,[2] but the proceeds of indebtedness contracted for any such purpose shall be used only for loans for capital construction" (12 Proceedings of 1967 NY Constitutional Convention, at 31 [emphasis supplied], quoting Proposed Constitution, art X, § 12 [b]).

The rejection of this amendment did nothing to deter the State's current practice of distributing taxpayer funds to foster the growth of private industry, which defendants call "economic development." Defendants make the specious assertion that the appropriations here do not violate the Gift Clause because the monies are not made "directly" to private companies but, rather, are first funneled through public corporations, which then distribute the funds to private entities. In other words, because the State distributes taxpayer funds through an intermediary like the ESDC, it is not the State that is loaning money to a private corporation or undertaking, but rather a public corporation that is loaning money to private enterprise. But we have cautioned on more than one occasion that "[w]hen the main purpose of a statute, or of part of a statute, is to evade the Constitution by effecting indirectly that which cannot be done directly, the act is to that extent void, because it violates the spirit of the fundamental law" (*People ex rel. Burby v Howland*, 155 NY 270, 280 [1898]; *see also Wein v State of New York*, 39 NY2d 136, 145 [1976]).

Here, plaintiffs state a valid claim that the disbursement of funds through intermediaries constitutes gifts of money "in aid

---

**2.** The phrase "economic and community development purposes" is defined in the proposed amendment as including "the renewal and rebuilding of communities, the development of new communities, and programs and facilities to enhance the physical environment, health and social well-being of, and to encourage the expansion of economic opportunity for, the people of the state" (12 Proceedings of 1967 NY Constitutional Convention, at 31, quoting Proposed Constitution, art X, § 12 [a]).

of" private corporations and that the disbursements are not cloaked in validity and constitutionality merely because the State may not have "directly" given the monies to these private entities. There seems to me no fundamental difference between the State directly giving monies to such private enterprises and the State creating a public corporation with the express intention of doing so.[3] For these reasons, the majority errs in holding that the Legislature may do indirectly, through a public corporation conduit, what the Constitution forbids it to do directly. But this error is apparently of only academic importance, because the majority, after discussing the indirect appropriations at length, goes on to hold that the Legislature may also do directly what the Constitution forbids. Some of the appropriations that plaintiffs challenge do not go through conduits, but are routed directly to trade associations made up of private firms—and the majority upholds these also. Either overruling *Westchester County Natl. Bank* or shrinking it beyond recognition, the majority seemingly decides that any gift or loan of money to private recipients is valid as long as it has "a predominantly public purpose" (majority op at 318). It is hard to see what is left of the constitutional prohibition. Accordingly, I would answer the certified question in the negative.

SMITH, J. (dissenting). I heartily join Judge Pigott's dissent, and add a few words to vent my own frustration at today's result.

It is an illusion—one that seems to have the persistence of original sin—that prosperity can be attained by taking money from taxpayers and handing it to favored businesses. A recent article restates well-established economic doctrine: "The idea of government intervention to influence the composition of a country's output has long been derided by economists for breeding inefficiency, reducing competition, encouraging lobbying and

---

**3.** Although the majority places significant emphasis on our holdings in *Schulz v State of New York* (84 NY2d 231 [1994]) and *Wein* (39 NY2d 136 [1976]) in support of their contentions that public benefit corporations and authorities are not arms of the State and therefore are constitutionally permitted to receive public funds from the State for a public purpose (majority op at 316), it is significant that *Schulz* involved the funding of *public works projects* through the Thruway and Metropolitan Transportation Authorities, and *Wein* involved state assistance to a financially-struggling New York City in 1975. Neither one of those cases sanctions the granting of state money through an intermediary for distribution to a private concern.

saddling countries with factories producing products nobody wants" (*Tinker, tailor,* Economist, Oct. 1, 2011, available at http://www.economist.com/node/21530958 [last visited Nov. 9, 2011]).

The New York Legislature's devotion to this self-destructive practice is no small matter. Among the expenditures at issue in this case is one described by the State as a commitment of "$140 million to support the construction of a wafer packaging facility and continued research and development efforts" to a joint venture of which International Business Machines Corporation is a member. This expenditure, it is said, will "result in the creation of at least 675 jobs" and the "retention" of 1,400 others. That works out to roughly $60,000 of state money per job. Another is an expenditure of $300 million to help an "international consortium of semiconductor manufacturers" expand a research and development program. This, we are told, will result in the creation of 450 jobs and the saving of 250 others: more than $400,000 per job. And the brief of defendant Globalfoundries U.S., Inc. discloses that the Legislature has appropriated $650 million to subsidize that company's semiconductor manufacturing (an appropriation distinct, as far as I can tell, from the $300 million semiconductor subsidy described by the State). Globalfoundries says that its manufacturing facility "is expected to employ more than 1,500 people, with an additional 5,000 jobs created by supplier firms"—implying a cost to the State of roughly $100,000 per job.

I seem to remember a time when IBM could make money by selling its products for more than it cost to produce them. I would have thought semiconductor manufacturers could do the same. If they cannot, a bailout for their shareholders is not a prudent use of more than a billion dollars in taxpayer funds.

Of course, the New York Legislature, so long as it stays within constitutional limits, is free to disregard both received economic teachings and common sense. I have defended before, and will no doubt defend again, the right of elected legislators to commit folly if they choose. But when our Legislature commits the precise folly that a provision of our Constitution was written to prevent, and this Court responds by judicially repealing the constitutional provision, I think I am entitled to be annoyed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and READ concur with Judge JONES; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judge SMITH concurs in another separate dissenting opinion.

Order reversed, etc.