[973 NE2d 1284, 950 NYS2d 510]

LILLIAN ROBERTS, as Executive Director of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, et al., Appellants, v DAVID A. PATERSON, as Governor of the State of New York, et al., Respondents.

Argued May 29, 2012; decided June 28, 2012

**POINTS OF COUNSEL**

*Stroock & Stroock & Lavan LLP*, New York City (*Curtis C. Mechling, Alan M. Klinger, Ernst H. Rosenberger, Meredith Strauss* and *Dina Kolker* of counsel), and *Mary J. O'Connell, General Counsel, District Council 37, AFSCME, AFL-CIO*, for appellants. I. The lower courts erred in interpreting the New York Constitution and the Racing, Pari-Mutuel Wagering and Breeding Law. (*Williamsburgh Sav. Bank v State of New York*, 243 NY 231; *Schulz v State of New York*, 84 NY2d 231, 84 NY2d 851, 513 US 1127; *Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp.*, 2 NY3d 524; *Wein v Levitt*, 42 NY2d 300.) II. Appellants meet the standard for a mandatory injunction to restore their health insurance benefits. (*Second on Second Café, Inc. v Hing Sing Trading, Inc.*, 66 AD3d 255; *Tucker v Toia*, 54 AD2d 322; *Bingham v Struve*, 184 AD2d 85; *McCain v Koch*, 70 NY2d 109; *Tom Doherty Assoc., Inc. v Saban Entertainment, Inc.*, 60 F3d 27.) III. Appellants are likely to succeed on the merits under multiple legal theories. (*Cook v Arrowsmith Shelburne, Inc.*, 69 F3d 1235; *Lihli Fashions Corp., Inc. v National Labor Relations Bd.*, 80 F3d 743; *Strauss v New York State Dept. of Educ.*, 26 AD3d 67; *Matter of Kemp v City of Hornell*, 250 AD2d 950; *Kuznetz v County of Nassau*, 229 AD2d 476; *Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept., Ulster County CSEA Ch.*, 37 AD2d 437; *Matter*

*of Jefferson County v New York State Pub. Empl. Relations Bd.*, 204 AD2d 1001; *Gulino v New York State Educ. Dept.*, 460 F3d 361; *Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776; *Agress v Clarkstown Cent. School Dist.*, 69 AD3d 769.) IV. The City of New York agrees that the State of New York is liable for the New York City Off-Track Betting Corporation's remaining obligations.

*Eric T. Schneiderman, Attorney General*, New York City (*Laura R. Johnson, Barbara D. Underwood* and *Richard Dearing* of counsel), for David A. Paterson and another, respondents. I. The complaint fails to allege that plaintiffs have any contractual right to health benefits, even as to the New York City Off-Track Betting Corporation itself. (*Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 245 AD2d 1042, 92 NY2d 326.) II. Because the State of New York was never plaintiffs' employer, any contractual right to benefits does not run against the State. (*Schulz v State of New York*, 84 NY2d 231; *Bordeleau v State of New York*, 18 NY3d 305; *Collins v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 361; *Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth.*, 5 NY2d 420; *Arculeo v On-Site Sales & Mktg., LLC*, 425 F3d 193; *Arbaugh v Y & H Corp.*, 546 US 500; *Strauss v New York State Dept. of Educ.*, 26 AD3d 67; *Matter of Kemp v City of Hornell*, 250 AD2d 950; *Kuznetz v County of Nassau*, 229 AD2d 476; *Matter of Jefferson County v New York State Pub. Empl. Relations Bd.*, 204 AD2d 1001.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Sharyn Rootenberg, Larry A. Sonnenshein* and *Janice Birnbaum* of counsel), for Michael Bloomberg and another, respondents. Appellants failed to demonstrate a likelihood of success against the City of New York, as the City is not legally or statutorily required to assume the New York City Off-Track Betting Corporation's (NYC OTB) obligation to pay the actual cost of NYC OTB retirees' health insurance and welfare benefits premiums. (*Bordeleau v State of New York*, 18 NY3d 305; *Schulz v State of New York*, 84 NY2d 231; *Matter of Haynes v Giuliani*, 238 AD2d 257; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471; *Matter of Palmer v Spaulding*, 299 NY 368; *Johnson v Hudson Riv. R.R. Co.*, 49 NY 455; *People v Felix*, 58 NY2d 156.)

*Colleran, O'Hara & Mills, L.L.P.*, Garden City (*Edward J. Groarke* of counsel), for New York State AFL-CIO, amicus curiae.

### OPINION OF THE COURT

READ, J.

The New York City Off-Track Betting Corporation (NYC OTB or the Corporation) was created in 1970 as a public benefit corporation charged with operating an off-track pari-mutuel betting system within New York City. The Corporation, which was established and governed by the Racing, Pari-Mutuel Wagering and Breeding Law, collected about $1 billion a year in wagers in each of the four fiscal years ending on June 30, 2008. The lion's share (roughly 80%) went to winning bettors, with the remainder distributed to the City, the racing industry and the State in accordance with statutory formulas. After paying these mandatory statutory distributions, however, NYC OTB was left with insufficient funds to cover operating expenses, and so accumulated growing deficits. When the Corporation prepared to cease operations in June of 2008, the Legislature stepped in and enacted a statute designed to stabilize NYC OTB's financial position to allow time for restructuring (*see* L 2008, ch 115 [NYC OTB Act]). Under the NYC OTB Act, the Governor (rather than the Mayor) appointed the Corporation's five-member board, and NYC OTB was temporarily empowered to retain more revenue to cover operating expenses.

Nevertheless, the Corporation continued to hemorrhage money, leading its board to file for bankruptcy protection under chapter 9 of the Bankruptcy Code (11 USC) on December 3, 2009 (*see* 427 BR 256 [SD NY 2010] [detailing NYC OTB's business operations, capital and debt structure and the events leading to the filing of the chapter 9 petition]). After the New York State Senate declined to adopt legislation implementing NYC OTB's proposed reorganization plan, the Corporation shut down on December 7, 2010 and the bankruptcy case was dismissed (*see* 2011 WL 309594, 2011 Bankr LEXIS 319 [SD NY 2011]). By letter dated December 8, 2010, the City's Corporation Counsel informed NYC OTB that in light of its decision to close, NYC OTB retirees would lose coverage under the City's health insurance and welfare benefit plans because the Corporation was no longer able to reimburse the City, as required by Racing,

Pari-Mutuel Wagering and Breeding Law § 606 (4)[1] and section 30 of chapter 115 of the Laws of 2008.[2]

By summons and complaint dated December 23, 2010, District Council 37, AFSCME, AFL-CIO (DC 37), and its Local 2021, which represented 1,027 NYC OTB employees and more than 600 retirees; the DC 37 Benefits Fund Trust; officers of these entities, including two prospective NYC OTB retirees; and four NYC OTB retirees (collectively, plaintiffs) brought suit against the State and the Governor (collectively, the State) and the Mayor and the City (collectively, the City). Plaintiffs sought a judgment declaring that the failure of the State and the City to fund, and the termination of, retiree health insurance and supplemental benefits violated section 12-126 of the New York City Administrative Code and "other express and implied obligations"; and ordering the State and the City to "immediately fund and reinstate retiree health insurance coverage and supplemental benefits, and not to terminate [these] benefits as of December 31, 2010, or at any later date."

On December 27, 2010, plaintiffs obtained a temporary restraining order requiring the State and City to continue funding their health insurance benefits, and moved for a preliminary injunction to the same effect. After a hearing on January 5, 2011, Supreme Court vacated the temporary restraining order as of January 12 and issued a decision and order, dated January 18, denying plaintiffs' request for a preliminary injunction (2011 NY Slip Op 30096[U] [Sup Ct, NY County 2011]). The judge reasoned that plaintiffs could not demonstrate a

1. Section 606 (4) states that
   "[a]ll employees and officers of the corporation in classes or positions whose incumbents, in equivalent classes or positions of the city, are eligible, as of the effective date hereof, to participate in, and receive benefits from any city authorized health insurance or welfare benefit program, shall be eligible to participate in, and receive benefits from any such health insurance or welfare benefit program; *provided, however, that [NYC OTB] shall reimburse the city or its designee for the actual cost of benefits under this subdivision*" (emphasis added).
2. Section 30 provides as follows:
   "Notwithstanding any other provision of law or regulation, nothing in [the NYC OTB Act] shall diminish the rights that retired employees and officers of [the NYC OTB] have to participate in, and receive benefits from any city authorized health insurance or welfare benefit program; *provided, however, that [the NYC OTB] shall reimburse the city or its designee for the actual cost of such benefits*" (emphasis added).

likelihood of success on the merits because there were "three statutes or constitutional provisions that provide that NYC OTB is responsible for funding its retirees['] health benefits, two of which *specifically prohibit* the State from assuming those obligations" (2011 NY Slip Op 30096[U], *4 [emphasis added]); namely, Racing, Pari-Mutuel Wagering and Breeding Law § 614;[3] article X, § 5 of the New York State Constitution;[4] and section 30 of the NYC OTB Act.

Next, Supreme Court rejected the four theories advanced by plaintiffs to support State or City liability for NYC OTB retiree health benefits. First, the judge held that the joint employer doctrine did not override statutory and constitutional provisions prohibiting the State from assuming NYC OTB's liabilities and obligations. Additionally, Supreme Court cited *Gulino v New York State Educ. Dept.* (460 F3d 361, 378 [2d Cir 2006]) for the proposition that extending this doctrine to "cases involving the complex relations between levels of government would be impracticable and would implicate . . . constitutional concerns."

Second, Supreme Court turned away plaintiffs' estoppel argument, which primarily relied on statements attributed to former Governor Paterson to the effect that NYC OTB's closure would foist $600 million in pension obligations onto the State. The

---

3. Racing, Pari-Mutuel Wagering and Breeding Law § 614 states that "[t]he *bonds, notes or other obligations* of the [NYC OTB] shall not be a debt of either the state or the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the corporation" (emphasis added). Relatedly, section 624 of the Racing, Pari-Mutuel Wagering and Breeding Law, as amended by the NYC OTB Act, provides that the
> "[NYC OTB] and its corporate existence shall continue until terminated by law; provided, however, that no such law shall take effect so long as the corporation shall have *bonds, notes or other obligations outstanding.* Upon termination of the existence of the corporation all of its rights, property, assets and funds shall thereupon vest in and be possessed by the state" (emphasis added).

4. The State cannot be liable for the obligations of a public corporation under the New York Constitution, the applicable portion of which states that
> "[n]either the state nor any political subdivision thereof shall at any time be liable for the payment of any *obligations issued* by such a public corporation heretofore or hereafter created, nor may the legislature accept, authorize acceptance of or impose such liability upon the state or any political subdivision thereof; but the state or a political subdivision thereof may, if authorized by the legislature, acquire the properties of any such corporation and pay the indebtedness thereof" (NY Const, art X, § 5 [emphasis added]).

judge considered this insufficient to create estoppel because any such representation would have been "contrary to the statutes and constitutional provisions" she had previously cited and, in any event, plaintiffs had not established detrimental reliance (2011 NY Slip Op 30096[U], *5).

Third, Supreme Court concluded that the State did not breach a fiduciary duty by causing NYC OTB to "plunge into 'deepening insolvency'" (*id.* at *6). In the judge's view, plaintiffs had not established that the State or City owed a fiduciary duty to NYC OTB, let alone that the State pushed NYC OTB into "deepening insolvency" by enacting the NYC OTB Act, which created a lifeline for the Corporation. Finally, Supreme Court held that NYC OTB retirees were not "City retirees" within the meaning of section 12-126 (a) (ii) of the Administrative Code because, quite simply, they were never employed by the City (*id.*). Plaintiffs appealed.

On May 26, 2011, the Appellate Division unanimously affirmed in a memorandum decision, which stated in its entirety as follows:

> "The City and the State are precluded by NY Constitution, article X, § 5, and Racing, Pari-Mutuel Wagering and Breeding Law § 614 from assuming the legal obligation to pay the NYC OTB retirees' health insurance benefits. Thus, plaintiffs cannot show a probability of success on the merits or otherwise meet the 'heightened standard' governing their application for a mandatory preliminary injunction" (84 AD3d 655 [1st Dept 2011]).

Then on July 14, 2011, the Appellate Division granted plaintiffs' motion for leave to appeal, certifying the following question to us: "Was the order of Supreme Court, as affirmed by [the Appellate Division], properly made?" We answer the certified question in the affirmative, but on a different ground.

First, plaintiffs did not demonstrate a likelihood of success on the merits of their claim against the City. Plaintiffs argued in the lower courts that NYC OTB retirees were eligible for City-authorized benefits as "City retiree[s]" under section 12-126 (a) (ii) of the Administrative Code. As Supreme Court pointed out, however, a "City retiree" (with an exception not relevant here) within the meaning of section 12-126 (a) (ii) must (among other qualifications) have been a "City employee" as defined by section 12-126 (a) (i). And this latter provision requires a "City

employee" to have been "employed by a *department or agency of the city*; and . . . *paid out of the city treasury*" (again, among other qualifications) (*see* Administrative Code of City of NY § 12-126 [a] [i] [emphasis added]).

As a public benefit corporation created by the State, though, NYC OTB was never a "department or agency" of the City (*see* Racing, Pari-Mutuel Wagering and Breeding Law § 603; *Bordeleau v State of New York*, 18 NY3d 305, 316 [2011] ["(t)his Court has 'consistently recognized public authorities as legal entities separate from the State, enjoying an existence separate and apart from the State, its agencies and political subdivisions' " (quoting *Schulz v State of New York*, 84 NY2d 231, 246 n 4 [1994])]). In opposition to plaintiffs' motion for preliminary injunctive relief, the assistant director of the City's Office of Management and Budget attested in an affidavit that NYC OTB's employees had "never been issued City paychecks" and were "never . . . paid for their OTB employment from the City's treasury." These statements are uncontested.

Further, NYC OTB retirees' participation in City-authorized health insurance and welfare benefit plans was contingent upon the Corporation's reimbursement of the City for these benefits' actual costs (*see* Racing, Pari-Mutuel Wagering and Breeding Law § 606 [4]; L 2008, ch 115, § 30). The assistant director attested in her affidavit that, as of early January 2011, NYC OTB was, in fact, nearly $8 million in arrears in payments to the City. And once NYC OTB ceased operations on December 7, 2010, there was no way for the Corporation to reimburse the City for NYC OTB retirees' health insurance benefits going forward, the circumstance that prompted the Corporation Counsel's letter of the next day.

With respect to the State, plaintiffs principally focus on whether the lower courts erred when deciding that Racing, Pari-Mutuel Wagering and Breeding Law § 614 and/or article X, § 5 of the New York State Constitution prohibit the State from funding NYC OTB retirees' health benefits. They contend that the word "obligations" in these provisions refers exclusively to debt obligations—i.e., bonds and other debt instruments issued by public authorities. On this appeal, we need not resolve and express no opinion about this question: whether or not section 614 and/or article X, § 5 prohibit the State from paying for the NYC OTB retirees' health insurance and supplemental benefits is beside the point since plaintiffs have stated no viable theory under which the State assumed responsibility for this assistance in the first place.

We return to the bedrock principle that a public benefit corporation, such as NYC OTB, "enjoy[s] an existence separate and apart from the State, its agencies and political subdivisions" (*Bordeleau*, 18 NY3d at 316 [internal quotation marks omitted]). Indeed, "a prime purpose for creating such corporations [is] to separate their administrative and fiscal functions from the State and its subdivisions" (*Collins v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 361, 367-368 [1984] [holding that public benefit corporation was not subject to constitutional provisions regarding civil service appointment]).

Plaintiffs advance several theories (i.e., joint or single employer, estoppel, fiduciary duty, piercing the corporate veil) in an attempt to get around or nullify NYC OTB's separate legal identity, but this obstacle to their success on the merits is insuperable. The NYC OTB remained "a body corporate and politic constituting a public benefit corporation" (Racing, Pari-Mutuel Wagering and Breeding Law § 603 [1]) under the NYC OTB Act, the State's last-ditch effort to revive the Corporation's fortunes. And when the Legislature adopted the act, it amended section 606 of the Racing, Pari-Mutuel Wagering and Breeding Law, governing pension, retirement and other benefits, to add a new subdivision (1). This provision assures that "[f]or the purposes of this section [606], *all employees of the [NYC OTB]* on or after the effective date of the chapter of the laws of two thousand eight which amended this section *shall remain employees of such corporation* after such effective date" (Racing, Pari-Mutuel Wagering and Breeding Law § 606 [1] [emphasis added]). As previously discussed, the Legislature also amended subdivision (4) of section 606 and adopted section 30 of chapter 115 of the Laws of 2008 so as to condition eligibility for benefits from City-authorized health insurance or welfare benefit programs on the Corporation's reimbursement of the City's actual costs (*see* nn 1, 2).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, etc.