STORY HOUSE CORPORATION, Respondent-Appellant, *v.* STATE OF NEW YORK JOB DEVELOPMENT AUTHORITY, Appellant-Respondent.

Third Department, November 9,·1971.

*D. Steve Rahmas* for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

HERLIHY, P. J. This is an appeal from an order entered on January 20, 1971 denying defendant's motion for summary judgment and a cross appeal by the plaintiff from the court's failure to grant summary judgment in its favor.

The present action arises from a loan agreement between the plaintiff and defendant upon which the plaintiff allegedly relied in constructing an additional building to its plant for the purpose of creating more employment in the operation of the business, which was primarily for binding books for schools, libraries and colleges and also the publication of books. After the plaintiff had completed the construction of the building, the State of New York Job Development Authority (hereinafter referred to as Job Development Authority), allegedly refused to disburse a $7,500 loan in accordance with the terms of an agreement entered into prior to the construction.

The defendant, Job Development Authority, is a public benefit corporation created by an act of the Legislature in 1961 for the express purpose " to assist, promote, encourage, develop and advance the general prosperity and economic welfare of the people of the state and to improve their standard of living; to

improve employment opportunities in any area of the state by assisting the financing of the cost of projects for the construction of new industrial or manufacturing plants ''. (Public Authorities Law, § 1803.)

With reference to the cross appeal by the plaintiff for summary judgment, we affirm the denial thereof as there are factual issues concerning the marketable title of the real property.

The primary issue on this appeal is whether an action may be brought against the Job Development Authority in the Supreme Court or whether exclusive jurisdiction rests with the Court of Claims.

As the result of the creation by the Legislature in modern times of various authorities, litigation has developed with reference to jurisdiction in a number of instances. There are three cases involving the New York State Thruway.

In *Easley* v. *New York State Thruway Auth.* (1 N Y 2d 374, 377 [1956]) the question was '' whether the *State Constitution* [art. VI, § 23] so limits the jurisdiction of the Court of Claims that the Legislature could not validly confer on that court jurisdiction over claims that are asserted not against the State itself but against such an ' Authority '.'' The court found there was no such limitation.

In *Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn.* v. *New York State Thruway Auth.* (5 N Y 2d 420 [1959]) the issue concerned whether section 135 of the State Finance Law was applicable to the '' Thruway '', the contention being that it was a '' board '' or '' department '' within the meaning of the section. The court stated at pages 424 to 425: '' However close such relationship [between the Thruway and the State] may be, though, it is abundantly clear that the Authority stands on its own feet, transacts its business affairs through its own personnel and on its own initiative and is not subject to the strict requirements imposed upon a board or department of the State by a provision such as section 135 of the State Finance Law. (Cf. Public Housing Law, § 151-a; General Municipal Law, § 101.) ''

*Benz* v. *New York State Thruway Auth.* (9 N Y 2d 486 [1961]) determined that the Supreme Court had no jurisdiction over an equitable action against the Authority for rescission or reformation of a contract for the sale of land to the Authority.

The foregoing decisions involved the nature and extent of the identity of the Thruway Authority with the State. However, in regard to jurisdiction the enabling statutes of the Authority specifically provided at the time of those decisions that the Court of Claims had exclusive jurisdiction over the Authority (Public

Authorities Law, § 368, subd. 5), except as otherwise provided. It seems apparent that those decisions are not controlling as to jurisdiction in legal actions involving the Job Development Authority as a party.

Another group of decisions, likewise not controlling, involve Authorities with a public function and a benefit to the State, but with a distinctly local application. (See *Matter of Suffolk County Water Auth.* v. *Water Power & Control Comm. of State of N. Y.*, 12 A D 2d 198; *Town of Amherst* v. *Niagara Frontier Port Auth.*, 19 A D 2d 107; *Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, 24 N Y 2d 400; *Swan Lake Water Corp.* v. *Suffolk County Water Auth.*, 20 N Y 2d 81.)

In a different category is *Matter of Dormitory Auth. of State of N. Y. (Span Elec. Corp.)* (18 N Y 2d 114) where the court found that the Authority enjoyed a separate existence, transacting its own business, hiring and compensating its own personnel and, therefore, was not identical with the State and as an incident thereto an arbitration clause in a contract of the Authority was operative and effective in an action brought in the Supreme Court. Unlike the provisions of the enabling statutes for the Thruway Authority, the enabling statutes for the Dormitory Authority contain no specification by the Legislature granting any jurisdiction to the Court of Claims.

Upon the issue of jurisdiction in the Supreme Court under the Job Development Authority we are concerned with the question of sovereign immunity and although we have noted that the foregoing cases are not controlling, they nevertheless serve as an illustration that as a legal matter a public corporation can be cloaked with sovereign immunity and/or the Legislature may constitutionally provide that jurisdiction is solely in the Court of Claims.

The Legislature in 1961 created the Job Development Authority which is in essence a public benefit corporation for the express purpose of advancing the general prosperity of the State and improving employment operation by assisting in the financing of construction projects of industrial plants. *(See Public Authorities Law, §§ 1802, 1803.)* In section 1803 of the Public Authorities Law there is a proviso as follows: " In carrying out such purposes and in exercising the powers granted by this title, the authority shall be regarded as performing an *essential governmental function.*" (Emphasis supplied.)

It would seem that ordinarily such a specific statement by the Legislature regarding the performance of a governmental function would be very nearly conclusive on the question of jurisdictional identity with the State. In *Easley* v. *New York State*

*Thruway Auth.* (1 N Y 2d 374, 376, *supra*) the court in concluding that the Thruway was an arm or agency of the State noted that the functions of the Thruway were declared by statute to be governmental. (See Public Authorities Law, § 353.) However, in *Matter of Dormitory Auth. of State of N. Y.* (*Span Elec. Corp.*) (18 N Y 2d 114, *supra*), the Authority being considered by the court also had a provision that it was to be regarded as performing an essential governmental function (Public Authorities Law, § 1685) and the court made no reference to that proviso and concluded that the Supreme Court had jurisdiction. The only distinction that would appear to be substantial between the relationship of the Dormitory Authority to the State and that of the Job Development Authority to the State would appear to be liability of the State on certain bonds and obligations of the Job Development Authority. In the *Dormitory Authority* (*Span Elec. Corp.*) case the court expressly noted that the State was not liable on any of Dormitory's obligations or bonds.

It has been stated that "jurisdiction of tort actions by implication is placed in courts of general jurisdiction". (*Town of Amherst* v. *Niagara Frontier Port Auth.,* 19 A D 2d 107, 108–109, *supra.*) It does not appear that the sole factor of State liability in regard to certain obligations of the Job Development Authority would be a sufficient premise to reach a result different from that attained in *Matter of Dormitory Auth. of State of N. Y.* (*Span Elec. Corp.*) (*supra*). A consideration of the functions of the Job Development Authority as an integral State duty or function requires the conclusion that the relationship of the Dormitory Authority to the function of education — an undisputable duty of the State — would be more clearly a State function and yet, the Court of Appeals concluded in the *Dormitory* case that the Supreme Court had jurisdiction.

The question of jurisdiction of a public authority has been considered by this court before in *Pantess* v. *Saratoga Springs Auth.* (255 App. Div. 426 [1938]). This case involved a plaintiff who was burned while receiving medical treatment from an employee of the Saratoga Springs Authority. An action was commenced in the Supreme Court for the Authority's negligence and in response the Authority moved to dismiss because as an agent of the State, it argued suit should have been brought in the Court of Claims not in the Supreme Court. On appeal we stated (p. 428) that: "Where the State assumes to act directly in the carrying out of its governmental function, even though it create and use a corporation for that purpose, it assumes responsibility for the conduct of its agent. * * * But, when the State *delegates* the governmental power for the performance of

a State function, the agency exercises its independent authority as delegated, as does a city, and its responsibility for its acts must be determined by the general law which has to do with that class of agent and corporate activity, apart from liability on the part of the State.''

After analyzing the provisions of the enabling legislation and the Authority's functions, the court said (p. 429): ''We regard the Saratoga Springs Authority as an agency exercising governmental powers, and the performance of its functions is not so closely allied or held in such intimate relation to the health activities carried on by the State itself as to make its work a part of the health work carried on directly by the State.'' The court concluded that the State was not liable for the torts of the Authority, that the plaintiff's claim could not be prosecuted in the Court of Claims and that the Supreme Court had jurisdiction of the subject matter. Although this decision has not been overruled, the next legislative session in 1939 passed a law which gave exclusive jurisdiction to the Court of Claims to determine claims against the Saratoga Springs Authority sounding in tort (L. 1939, ch. 871; Public Authorities Law, § 1607).

The Legislature is thus well aware of the limitations on jurisdiction over public authorities and the necessity for a specific legislative provision to restrict jurisdiction to the Court of Claims. Since there is adequate judicial precedent to support Supreme Court jurisdiction over public authorities as seen above and no specific legislative direction as to jurisdiction over the Job Development Authority, this court need not restrict jurisdiction over the Job Development Authority to the Court of Claims.

The functions — which seem to be the fundamental test in deciding jurisdiction — of this Authority are of such an economic and financial nature and not so closely allied with the State itself as to meet the test that jurisdiction over the Authority attaches to the Supreme Court.

The order should be affirmed.

REYNOLDS, GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Order affirmed, without costs.