*213 OPINION OF THE COURT
Glen T. Bruening, J.
Claimant commenced this action seeking money damages for personal injuries he sustained on March 13, 2005 when he was injured while snowmobiling on the Great Sacandaga Lake (hereinafter Reservoir). Defendants move this court for an order pursuant to CPLR 3212 granting them summary judgment dismissing the claim on the grounds that the State of New York is not a proper defendant in this proceeding and that the court lacks subject matter jurisdiction to consider money damage claims against the Hudson River-Black River Regulating District (hereinafter District). In the alternative, defendants contend that claimant is barred from recovering damages based on the application of General Obligations Law § 9-103, the doctrine of assumption of the risk, and because it had no prior notice of any unsafe condition. Claimant opposes the motion in its entirety.
The facts of the accident are not in dispute. On March 13, 2005, at approximately 2:40 p.m., claimant was operating a snowmobile owned by and in the presence of his friend, Chris Spencer, approximately 200 feet north of Sand Island on the Reservoir, located in the Town of Broadalbin and County of Fulton. Claimant was injured when, while operating the snowmobile at approximately 55 miles per hour, he hit a three-foot high ice heave and was thrown off the snowmobile, landing on the ice. Claimant sustained, among other injuries, a fractured pelvis.
There is no dispute that the State of New York owns the land encircling the Reservoir up to a certain water level (see Niagara Mohawk Power Corp. v Hudson Riv.-Black Riv. Regulating Dist., 2010 WL 1838982, *1, 2010 US Dist LEXIS 44202, *2 [ND NY 2010]). However, defendants contend that since that part of the Reservoir where claimant sustained his injuries is maintained by the District, the State of New York is not a proper defendant in this action and, as a result, this court lacks jurisdiction. In opposition to defendant’s motion, claimant submits that the State of New York owns the water where the accident occurred and that the District created the dangerous condition by reducing the Reservoir’s water level after the surface had frozen. Claimant argues that the District is an agency of the State of New York, subject to the control and direction of the State or, in the alternative, that the District’s functions are so closely linked with the State as to be essentially the State itself. In support of this contention, claimant relies on the District’s enabling legislation which, in part, provides the New York State Comptroller *214 and the Department of Environmental Conservation (hereinafter DEC) with oversight of a river regulating district’s creation, operations and finances. With respect to the merits of the claim, claimant argues that he cannot assume the risks where, as alleged here, the hazard was concealed. Claimant further contends that defendants are not entitled to immunity from liability based on General Obligations Law § 9-103. Finally, claimant contends that a determination granting defendants summary judgment is premature since discovery is not complete. The court will first address the jurisdictional issue which is potentially dispositive of this matter.
Court of Claims Act § 8 provides, in relevant part:
“The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article” (see also Court of Claims Act § 9 [2]).
Accordingly, lawsuits for money damages are permitted against “the State itself, or actions naming State agencies or officials as defendants, where the action is, in reality, one against the State — i.e., where the State is the real party in interest” (Morell v Balasubramanian, 70 NY2d 297, 300 [1987]). However, such lawsuits must be litigated in the Court of Claims (see id.; Easley v New York State Thruway Auth., 1 NY2d 374, 376-377 [1956]; Court of Claims Act §§ 8, 9 [2]).
The District was created in 1959 by legislation that combined the then-existing Hudson River and Black River Regulating Districts (see ECL 15-2137). The District is a “public corporation” (ECL 15-2103 [1]) charged with the construction, maintenance and operation of reservoirs and appurtenant facilities in the Hudson and Black River basins for the purpose of regulating the flow of those rivers “when required by the public welfare, including public health and safety” (ECL 15-2103 [1]; see ECL 15-2109 [3]; 15-2139 [2]; Matter of Niagara Mohawk Power Corp. v State of New York, 300 AD2d 949, 950 [3d Dept 2002]). Commonly, a legislatively created public corporation, such as the District, would be devised, in theory, to be
“self-supporting, able to meet debt obligations through revenues obtained from its own valuable assets, such as fares and user fees. Such public benefit corporations would separate their administra *215 tive and fiscal functions from those of the State, to ‘ “protect the State from liability and enable public projects to be carried on free from restrictions otherwise applicable” ’ ” (Schulz v State of New York, 84 NY2d 231, 244 [1994] [citation omitted], cert denied 513 US 1127 [1995], quoting Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423 [1959]; see also Bordeleau v State of New York, 18 NY3d 305, 315-316 [2011]).
In addition to hearing cases against the State itself pursuant to Court of Claims Act §§ 8 and 9 (2), by statute, the Court of Claims has exclusive jurisdiction of tort and contract claims against the State Thruway Authority (see Public Authorities Law § 361-b), exclusive jurisdiction of claims for property damage or for personal injury arising out of the operation by the New York State Olympic Regional Development Authority of any participating Olympic facility owned by the state or of the Gore Mountain Ski Center (see Public Authorities Law § 2622 [4]), exclusive jurisdiction of tort and contract claims against the former Jones Beach State Parkway Authority (see Public Authorities Law § 163-a), and exclusive jurisdiction of tort and contract claims against the former Bethpage Park Authority (see Public Authorities Law § 212-a). However, in other instances, a public corporation’s enabling legislation is silent as to whether the Court of Claims has exclusive jurisdiction of certain actions against it (see e.g. Public Authorities Law § 540 [New York State Bridge Authority]; Public Authorities Law § 1691 [New York State Dormitory Authority]; Public Authorities Law § 1831-a [New York Job Development Authority]). One such instance was addressed by the Appellate Division, Fourth Department, in Cole v State of New York (64 AD2d 1023, 1023 [4th Dept 1978]), where claimant sought permission to file a late claim in the Court of Claims against the Power Authority of the State of New York, a public corporation (see Public Authorities Law § 1002 [1]), alleging injuries arising out of claimant’s use of a snowmobile on property claimed to be maintained by the Authority. The Appellate Division, in modifying the Court of Claims decision, held that based on the absence of any language in the enabling legislation, the jurisdiction of the Court of Claims does not encompass a suit sounding in tort against the Authority (see id.; Public Authorities Law § 1017 [added L 1990, ch 804, § 9, compelling compliance with the commencement requirements of General Municipal Law § 50-e for *216 actions founded upon tort]; compare Public Authorities Law § 1007 [10] [Court of Claims has jurisdiction over appropriation matters involving the Power Authority of the State of New York]; see also Gembala v Audobon Assn., 97 AD2d 345, 347 [4th Dept 1983]).
In other cases, courts have undertaken an analysis of the public corporation’s functions and enabling legislation to determine whether the business of the corporation “is so closely linked with State functions as to be essentially the State itself’ (Belscher v New York State Teachers’ Retirement Sys., 45 AD2d 206, 208 [4th Dept 1974]). For example, in Story House Corp. v State of NY Job Dev. Auth. (37 AD2d 345, 349 [3d Dept 1971], affd 31 NY2d 942 [1972]), an action commenced in Supreme Court regarding the alleged refusal of the New York Job Development Authority to disburse certain loan proceeds, the Appellate Division, Third Department, held that the Court of Claims did not have exclusive jurisdiction over the Authority. The Court concluded that “[t]he functions — which seem to be the fundamental test in deciding jurisdiction — of this Authority are of such an economic and financial nature and not so closely allied with the State itself as to meet the test that jurisdiction over the Authority attaches to the Supreme Court” (id. at 349 [emphasis added]; see also Pantess v Saratoga Springs Auth., 255 App Div 426, 429 [3d Dept 1938] [the Court of Claims did not have jurisdiction over the Saratoga Springs Authority, the function of which was found to be “not so closely allied or held in such intimate relation to the health activities carried on by the State itself as to make its work a part of the health work carried on directly by the State”]).* Likewise, in Gembala v Audobon Assn. (97 AD2d 345 [1983]), a negligence action commenced in Supreme Court, the Appellate Division, Fourth Department, in rejecting the contention that the Legislature’s silence with respect to the proper forum for negligence cases against the Urban Development Corporation implies that some forum other than Supreme Court was intended, held that the Court of Claims did not have exclusive jurisdiction over that Corporation. Although the Corporation had many ties to the State, the Court in Gembala concluded that it was not identical to the State and noted that the Corporation’s bond proceeds are *217 not State money, and that the “grant of power to [the Urban Development Corporation] to sue and be sued impliedly vests jurisdiction of tort actions in courts of general jurisdiction” (id. at 346 [internal quotation marks and citations omitted]). The statutory authority to sue and be sued, however, is not dispositive (see Bulson v Control Data Corp., 164 AD2d 141, 143 [3d Dept 1990] [“Nor do we find the Legislature’s grant to NYSHESC of the power to sue and be sued inconsistent with its status as a State agency”]). Here, the enabling legislation for the river regulating districts, in general, and the Hudson River-Black River Regulating District, in particular, contains no specification by the Legislature granting any jurisdiction to the Court of Claims. The failure of the Legislature to include such language within the statute is an indication that its exclusion was intended (see Matter of Doe v City of Schenectady, 84 AD3d 1455, 1458 [3d Dept 2011]). Based on the reasoning in Cole v State of New York (64 AD2d 1023 [1978]), this court does not have subject matter jurisdiction over the instant claim because the Environmental Conservation Law does not expressly confer upon the Court of Claims jurisdiction over claims against the District. Moreover, a close review of the District’s functions leads this court to the same conclusion under the analysis adopted in Story House Corp. v State of N.Y. Job Dev. Auth. (supra), and similar cases.
Environmental Conservation Law article 15, title 21 provides that the District has been given power to: sue and be sued (see ECL 15-2103 [1]), acquire real property in the name of the State (see ECL 15-2103 [1]; 15-2111 [8]), incur contract liabilities (see ECL 15-2103 [1]), exercise the right of eminent domain (see ECL 15-2103 [1]; 15-2109 [5]), relocate or discontinue a public highway, road or street (see ECL 15-2113 [1]), apportion costs on statutorily defined beneficiaries to finance the maintenance and operation of its river regulating reservoirs (see ECL 15-2103 [1]; 15-2121) and make necessary rules and regulations (see ECL 15-2909 [1]). The District is responsible for the payment of property taxes (see ECL 15-2115), and also authorized to issue bonds and incur obligations to finance the costs of any public improvement (see ECL 15-2129 [1]). However, any such bond “shall not be construed in any event as bonds or indebtedness of the state, and the state shall not be obligated to pay the principal or interest therefor” (id.). The District’s revenue, used for the purpose of the construction, maintenance and operation of the Reservoir, is generally received from assess *218 ments (see ECL 15-2121, 15-2123, 15-2129). Those factors all serve to support the conclusion that the District is not identical with the State. Indeed, the statute provides that the District is self-supporting, able to meet debt obligations through revenues obtained from assessments and other user fees and the debts of the District are not the debts of the State (see Schulz v State of New York, 84 NY2d at 244). While the statute provides that the DEC does retain control over a district’s creation and apportionment and that the board members, who are appointed by the Governor, must report to the DEC annually (see ECL 15-2103 [2] [a]; [3]; 15-2107 [2]; 15-2109 [1]; 15-2119 [1] [e]; 15-2121 [4]; 15-2131, 15-2137 [3]), and while the Comptroller oversees the District’s finances (see ECL 15-2129, 15-2141), after considering and weighing all its powers, functions, and obligations, the court concludes that the District enjoys a separate existence from the State (see Matter of Dormitory Auth. of State of N.Y. [Span Elec. Corp.], 18 NY2d 114, 118 [1966]). Insofar as the District is charged with the construction, maintenance and operation of reservoirs and appurtenant facilities and exercises its independent authority as delegated, “there is no authority for making claim against the State, but the agency exercising the delegated authority must respond for its own actionable conduct” (Pantess v Saratoga Springs Auth., 255 App Div at 428; see also Malone v State of New York, 1 NY2d 837, 838 [1956] [The doctrine of respondeat superior does not apply as between the State and the Black River Regulating District. It follows that the State is not liable for the acts of the Regulating District]). In light of Malone v State of New York (1 NY2d 837 [1956]), the court disagrees with claimant’s argument that the Court of Claims has jurisdiction over the District based on the Court of Appeals decision in Black Riv. Regulating Dist. v Adirondack League Club (307 NY 475 [1954], appeal dismissed 351 US 922 [1956]). In Black Riv. Regulating Dist. v Adirondack League Club, the Court of Appeals did not address whether the Court of Claims had jurisdiction over the river regulating district. Rather, the Court concluded that the Black River Regulating District and its Board was a creature of the Legislature and, therefore, had no standing to challenge the constitutionality of a legislative act limiting the District’s powers (see id. at 489). Finally, the court also disagrees with claimant’s assertion that the Court of Claims has jurisdiction over the District because the New York State Inspector General conducted an investigation of the District. The State Inspector *219 General has jurisdiction over the District not because the District is identical with the State, but because the Inspector General enjoys broad jurisdiction over State agencies and certain public corporations (see Executive Law § 51).
Based on the foregoing, the court concludes that the District is the proper party in this action and that jurisdiction to consider damage claims against the District rests in courts of general jurisdiction, rather than the Court of Claims. Accordingly, defendant’s motion (M-80193) seeking summary judgment dismissing the claim for lack of subject matter jurisdiction is granted. In light of this determination, defendant’s remaining contentions, as well as claimant’s motion (M-79554) seeking an order pursuant to CPLR 3124 and 3126 to compel defendant to comply with certain discovery demands and, alternatively, seeking to preclude defendant from presenting certain evidence at trial, are denied as moot.

 After the Pantess decision, former section 1306-a of the Public Authorities Law was enacted, granting jurisdiction to the Court of Claims over causes of action sounding in tort against the Saratoga Springs Authority (see Easley v New York State Thruway Auth., 1 NY2d at 381 [Van Voorhis, J., dissenting]).